# BELKNAP,

## DECEMBER TERM, A. D. 1855.

---

### BOSTON, CONCORD & MONTREAL RAILROAD *v.* THE STATE.

| 32 | 215 |
| 66 | 74 |
| 66 | 225 |
| 66 | 294 |
| 32 | 215 |
| 67 | 20 |
| 168 | 159 |

Railroad corporations are by statute subjected to indictment and fine in case of the loss of life by reason of the negligence or carelessness of the proprietors, or their servants. *Held*, there is no valid objection to such statute, and the corporation may be legally subjected to such proceedings.

Judgment may be rendered against a corporation upon an indictment, upon default of appearance, after due notice to appear.

A summons is the only process to be issued to a corporation to appear and answer to an indictment.

IN ERROR. The original proceeding is an indictment against the Boston, Concord and Montreal Railroad, found at the Court of Common Pleas, in Belknap County, on the fourth Tuesday of February, 1853, founded on the 7th section of an act entitled an act in amendment of the laws relating to railroads, passed June, 1850. (Comp. Stat. 354, sec. 66.)

The indictment, in various counts, charged that the railroad corporation, on the 7th of October, 1852, at Meredith, by the negligence and misconduct of their servants, caused the death of John H. Smith, of Dover, esquire.

On this indictment a summons issued March 14, 1853, requiring the sheriff to summon the defendant corporation to appear and answer the indictment, which was served, as is shown by the return, on the 28th of March, 1853, by giving in hand to the clerk of the corporation an attested copy.

The record of the judgment recites the style of the Court of Common Pleas, holden 4th Tuesday of February, 1853, and the indictment. It then recites that a summons to answer the indictment was duly served on the defendants on the 28th of March, 1853, and that at the Court of Common Pleas, holden, &c., on the 1st Tuesday of September, 1853, said railroad were, by order of court, three times called to come into court and answer to the State ; and the said railroad did not appear, and were declared to be defaulted. And it was thereupon considered by said Court of Common Pleas, that the railroad pay a fine of eighteen hundred dollars, to the use of Joseph H. Smith, administrator of the deceased, for the equal benefit of said Joseph and of William B. Smith, alleged to be brothers, and only heirs at law of the deceased, with costs, taxed at $82.12.

The errors assigned are, 1. That the indictment is insufficient, the offence not being one which by law a corporation could commit. 2. That there was no legal proceeding to cause the corporation to appear, and no judgment could be lawfully rendered against them on default of appearance. The plea was *in nullo est erratum.*

*J. Bell,* for the plaintiffs in error.

1. The statute on which this indictment is founded, in its application to this and other existing railroad corporations, is unconstitutional and void.

The defendants have by their charter the rights, and are subject only to the liabilities of other common carriers. Secs. 5 and 11 of the act of incorporation of the Boston, Concord and Montreal Railroad, and the Compiled Statutes, 347, sec. 33.

The statute of 1850, on which the indictment is founded, attempts to subject the defendants to additional and onerous liabilities, and is, therefore, an infringement of their vested rights under their charter. See *Backus* v. *Lebanon,* 11 N. H. 19 ; *Fletcher* v. *Peck,* 6 Cranch 89 ; *Territt* v. *Taylor,* 9 ditto 43 ; *Wilkinson* v. *Leland,* 2 Peters 627, 657 ; *Dartmouth College* v. *Woodward,* 4 Wheat. 510.

The legislature can no more pass laws infringing the implied privileges of a corporation, than those expressly granted. *People* v. *Manhattan Co.*, 9 Wend. 351; *State* v. *Tombeckbee Bank*, 2 Stewart 30, (1 U. S. Dig. 555); *Nesmith* v. *Sheldon*, 7 How. 812, (9 U. S. Dig. 70); *Bailey* v. *Philadelphia R. R.*, 4 Harring. (Del.) 389; *Green* v. *Biddle*, 8 Wheat. 1; 1 Aik. 264; *New-Jersey* v. *Wilson*, 7 Cranch 166.

2. The statute of 1850, in its application to existing railroad corporations, is opposed to the general spirit and to various provisions of the Constitution of this State.

It is partial in its operation, because it applies not to common carriers generally, but only to the very limited number whose transportation is by railroads.

It is not a standing general law, applicable to all parties standing in like circumstances, as it should be to constitute " the law of the land," according to the true construction of the 15th article of the Bill of Rights. See *Proprietors of Kennebec Purchase* v. *Laboree*, 2 Greenl. 275; *People* v. *Platt*, 17 John. 195.

Under their limited delegation of power, the Legislature of this State can only pass " wholesome and reasonable laws," and not those which are partial in their operation, or which contravene the provisions of the 2d article of the Bill of Rights, which recognizes " the natural, essential and inherent right of acquiring, possessing and protecting property." *Opinion of Judges*, 4. N. H. 572; *Lewis* v. *Webb*, 3 Greenl. 326; *Ward* v. *Barnard*, 1 Aikin 121; *Schooner* v. *Dolbie*, 17 Ohio 125; *Walley* v. *Kennedy*, 2 Yerger 554; *State Bank* v. *Cooper*, 2 ditto 599; *Jackson* v. *Frost*, 5 Cowen 346; *Van Horn* v. *Dorrance*, 2 Dal. 304; *Bradford* v. *Brooks*, 2 Aik. 284.

*H. A. Bellows*, for the same.

At common law the appearance of the defendant was essential in both civil and criminal cases. Without it no judgment could be rendered in either. In the case of natural persons, it was necessary to resort to the process of outlawry; the consequences of which in capital offences were equivalent to convic-

tion : And in misdemeanors it operates as a conviction for contempt, involving forfeiture of goods and imprisonment, and civil disabilities.

In the case of corporations, the process to compel an appearance was by summons; and on refusal to appear by distress infinite, if necessary ; the corporation incurring forfeitures on every default, until all the effects of the corporation, including the franchise, being gone, nothing further could be done.    1 Chitt. Cr. Law 284, (original paging 348, and see page 287.)

In the case of a corporation, a *distringas* is the only course that can be adopted.    1 Ch. Cr. L. 705 ; 1 Salk. 374 ; Haw. P. C., B. 2, ch. 27, sec. 10 ; 1 Tidd's. Prac. 116, and cases cited ; Whart. Cr. Law 59, and notes ; Ang. & Ames on Corp. 576–7, and note 1 ; *Regina* v. *Birmingham, &c. Railway*, 9 C. & P. 469 ; *Regina* v. *Chichester*, 8 L. & E. 294.

At common law, then, no judgment could be rendered, either in a civil or criminal proceeding, without the appearance of the party defendant.    In civil suits, this was long since changed by statute.    In regard to indictments, the law was changed in the case of proceedings against towns for defects in highways. Law of Dec. 20, 1797, (Edition of N. H. Laws, 1805, p. 209.) This provided that in an indictment against any town, a summons shall be served on the clerk or selectmen, and if the town do not appear and plead, the court shall order the general issue to be entered, and the merits tried, and judgment, &c., and enforced by distress.

The law of June 26, 1827, (Laws, ed. of 1829, p. 108,) provides, that in case of such service and default the court may order a default to be entered, or the general issue upon which the merits shall be tried, and judgment rendered accordingly.

By the Revised Statutes, p. 125, sec. 3, if the town do not appear, the court was authorized to render a judgment.    Until this statute of June, 1827, the court had no power to render judgment on default in such cases, although towns were charged with the duty of keeping in repair highways, by the Provincial Statute of 4 Geo. II., ch. 51, (Prov. Laws, 1771, p. 63.)

And it will be observed, too, that it is for this species of offence, more than any and even all others — that is, the neglect to keep in repair a highway — have indictments against corporations been maintained. And until 1827 no provision existed in this State for a judgment on default in such cases. Until then the most that could be done was to try the merits upon the *general issue*.

The act under which this indictment is framed had no existence until 1850. It changes somewhat the law in regard to corporations, inasmuch as it makes them liable for misfeasance, if at all.

It is said that the practice warrants a judgment on default in this case, but no case is cited, and we believe none can be found. It may be that corporations have submitted to answer in other cases, besides those provided for by the laws cited, but it will be found that indictments against corporations, except towns for bad roads, have been extremely rare ; the remedy in most cases having been by civil suits, for the penalty, as against towns for want of guide-boards, pounds, &c.

An information in the nature of a *quo warranto*, is a civil proceeding, not criminal. Angell on Corp. 686, 7 ; *State* v. *Olcott*, 6 N. H. 74.

In Massachusetts, by a law of 1851, ch. 348, provision is made for judgment on default against corporations, showing the belief of the necessity of such law in that State.

The law referred to by the counsel for the State, (Compiled Statutes 462, sec. 3,) applies to civil process only, and so are the forms given in that chapter. Just so is it in chap. 194, with the provision for the service of original writs and writs of mesne process. Even if it did prescribe the mode of serving a venire, which by the common law should first issue to the corporation, it would not touch the question here, any more than it did before the law of 1827. No power is implied to render a judgment on default.

The nature of the offence is immaterial, and does not affect the power of the court to render a judgment without appearance.

It may have a bearing upon the question, when brought before
the Legislature, but it cannot authorize the rendering a judg-
ment, unless provision is made for it by statute. So the fact
that the law would be inoperative under this view, can have no
effect on the question. It is the fate of many better laws than
this. The law is highly penal in its character, and neither the
law itself, nor the remedy under it, should be extended by im-
plication.

The law of July 13, 1850, sec. 7, is taken from a law of
Massachusetts relating to the proprietors of stage coaches, steam-
boats, &c., which charges individuals only. (Laws of Mass.,
March 23, 1840 ; Supplement to Revised Statutes, ch. 8, p.
165.) " An act concerning passenger carriers, liability of car-
riers, where the life of a passenger is lost by reason of their
negligence." " If the life of any person, being a passenger, shall
be lost by reason of the negligence or carelessness of the pro-
prietor or proprietors of any railroad, steamboat, stage coach, or
of common carriers of passengers, or by the unfitness or gross
negligence, or carelessness of their servants or agents, in the com-
monwealth, such proprietor or proprietors, and passenger carriers,
shall be liable to a fine not exceeding five thousand dollars, nor
less than five hundred dollars, to be recovered by indictment, to
the use of the executor or administrator of the deceased person,
for the benefit of his widow and heirs : a moiety thereof to go
to the widow, and the other to the children : but if there be no
children, the whole to the widow, and if no widow, to the heirs,
according to the law regulating the distribution of intestate per-
sonal estate among heirs." March 3, 1840.

It was drawn, probably, with the idea that an attempt to make
a corporation liable for misfeasance would be anomalous, and so
in fact it would have been. See Angell and Ames on Corp.
392 ; *State* v. *Great Works M. Co.*, 20 Maine 41 ; Wharton's
Criminal Law 57, 8 ; *State* v. *Godfrey*, 3 Fairf. 361, which was
an indictment against individuals.

In the case of *Kane* v. *The People*, 8 Wend. 203, which was
error to reverse a judgment on indictment against an individual

director of a corporation, the president and directors being charged with the duty of repairing the road, it was held that the indictment was properly against an individual director, it being declared that neglect was a misdemeanor in the president and individual directors.

The section on which this indictment is framed is almost identical with the Massachusetts act, except that the Massachusetts act extends to proprietors of *steamboats* and *stage coaches*, as well as railroads.

No one, we presume, will contend that the Massachusetts act makes a railroad corporation liable. No terms are used that necessarily imply it; and unless it be so, the law being, as it is, highly penal, is not to be construed to extend beyond the plain meaning of the terms used ; especially when, by extending it to the corporation, it is made to conflict with all our established notions on the subject.

The negligence or carelessness of the proprietor, spoken of in that act, must mean of the *individual*, and not a corporation ; for the corporation can no more be guilty of negligence than it can commit an assault and battery. And besides, had it been intended to charge the corporation, the term corporation would have been used. And such it seems was the view of the Massachusetts Legislature, which, by law of May 25, 1853, made the corporation liable in express terms.

The New-Hampshire law omits the proprietors of stage coaches, steamboats and common carriers of passengers, but in other respects copies the Massachusetts law. But these omissions could not change the construction in regard to corporations. Had it been the purpose to make this innovation, it is inconceivable that the Legislature should not have used the plain and obvious language to accomplish it.

It is true that it has been settled in this State than an indictment against individual members of a corporation could not be maintained. But in the case of *State* v. *Gilmore & a.*, the indictment was framed in such a way as to make each individual liable for a penalty of from five hundred to five thousand dollars,

instead of the whole being liable for a single penalty. It was not alleged that these persons were all the *proprietors* of the railroads, and so a judgment against them would have been no bar to a prosecution against others. On demurrer it was held that the indictment could not be maintained, and upon several distinct grounds. But it was not, as we think, decided that the corporation would be liable.

If it be said that unless it will lie against the corporation, the law will be a dead letter, on account of the difficulty of proceeding against all the proprietors, we say, in reply, that this is no answer; that the statute being highly penal is not to be extended to corporations, unless its terms plainly require it, even if it be difficult to execute it otherwise.

So if it be said that the effect will be the same either way, we answer, that the rule of contribution would be very different; in the one case equally, and in the other in proportion to the stock of each proprietor.

*Perley* and *Bartlett*, for the State.

1. *In nullo est erratum*, confesses all facts assigned for error. It may be doubted whether the second error here assigned is error in law or in fact. *Smith* v. *Smith*, Cro. Charles 421; *Thoroughgood* v. *Scrogs*, Cro. El. 582; *Arundell* v. *Arundell*, Yelverton 58. And this demurrer is filed to avoid a confession, as matter of fact, that no service was made.

The sheriff's return is part of the record, and if the service returned is good, the assignment contradicts the record, and for that reason is demurrable. *Carlton* v. *Mortagh*, 6 Modern 206; Salkeld 268, S. C.

2. The process in this case was summons, which the return shews to have been duly served. The statute, (Comp. Stat. 462, chap. 193, § 3,) provides for process by summons, capias, and attachment, and in no other form. No other process is used in the practice of this State. The corporation could not be taken and brought in bodily, on a capias. Our writ of attachment can be used only where property is taken on mesne pro-

cess, to secure a judgment.   No other or further measures than those adopted could be taken on the part of the State to enforce an appearance to this indictment; for we have no judgment nor process of outlawry.

The plaintiffs were not charged by the indictment with a felony, or even with a misdemeanor; they were not in fact charged *with any crime*, in the proper sense of that term.   They were charged with a particular neglect of their corporate duty, and the indictment is the method provided to recover, for the benefit of an individual or individuals, the penalty given by the statute. In such cases, and in the case of misdemeanors, it is not necessary that the defendant, if an individual, should appear in person; he may come in and plead by attorney.

And when a corporation is indicted for any cause, at common law or by statute, the appearance is by attorney.   1 Chitty Cr. Law 411, 412.

The plaintiffs, therefore, could have felt no embarrassment as to the proper manner of answering to this indictment, and their objection on this point is entirely formal and technical.

If the plaintiffs have not been legally served with this indictment, they never can be, and the statute is idle and inoperative. Nor will this be by any means a solitary or unusual case, for there is no peculiar difficulty in this indictment.   The State must meet the same difficulty in all the numerous cases where corporations are liable to a public prosecution, except, perhaps, in the single instance of towns prosecuted for neglect to make and repair highways.

All corporations are liable to indictment at common law for any breach or neglect of a public duty.   9 Car. & Payne 469; *Reg.* v. *Birmingham & Glo. R. R.*, 3 A. & E.; N. S. 223, S. C.   And in this State corporations are liable by statute, and have been for a great number of years, to be indicted for various neglects and violations of corporate duty; (Com. St. 304, § 14; 322, § 7 and 11; 327, § 38; 338, § 35; 347, § 33; 350, § 45; 360, § 69; 371, § 4; 539, § 4;) and no special provision is made for the service of any indictment on a corporation, except in the case above mentioned.

A *quo warranto*, or an *information* in the nature of one, is usually in substance, and always in form, a criminal proceeding, and must be served as such; and no legal service of such process could be made unless the service in this case is sufficient. It is believed that there has been an established practice to serve informations and indictments against corporations by summons, as was done in this case; and the Legislature must have intended that the corporation in this case should be brought in by the process then in use against other corporations, on charges in the name of the State.

3. The neglect to appear on service of legal process must be taken to have the effect of a confession of the charge. In some cases, on neglect of a defendant to appear to a criminal charge, the court have proceeded to try the question of his guilt by a jury, (*Canada* v. *The Commonwealth*, 9 Dana 304; *Steele* v. *The Commonwealth*, 3 Dana 84;) but such an *ex parte* trial is not known to our practice, and could be of no value to the defendant.

4. The statute is not unconstitutional.

It is a general law, interposing for the regulation of all railroads, and not a special act, pointed at a single corporation. It relates to a matter of general public concern, and is intended to protect the public against the neglect of this class of corporations in the performance of their public duty. It stands on the same ground with the law of Congress relating to steamboats.

It does not take away any vested right or impose any new duty or obligation. It provides a penalty for the neglect of the corporation to perform their existing duty, of running and managing their road with proper care; for the penalty is given only when the corporate duty of the railroad has been neglected; and to provide new remedies to enforce the performance of corporate duties, is clearly within the scope of legislative authority. *Lunt's Case*, 6 Greenleaf 414; *State* v. *Bosworth*, 13 Vermont 402; *Bank* v. *The State*, 4 Sm. & M. 439; 4 Dig. 339; *Bryant* v. *Bank*, 6 Shepley 240; *Stanley* v. *Stanley*, 13 Shepley 191; *Hart* v. *Railroad*, 13 Metcalf 99; *Suydam* v. *Moore*,

8 Barb. Sup. Ct. 358 ; 12 Dig. 505, No. 12 ; *Brown* v. *Bank*, 8 Mass. 445 ; *Bank* v. *Apthorpe*, 12 Mass. 252 ; *Marcy* v. *Clark*, 17 Mass. 330.

The plaintiffs are a public corporation. The indictment alleges that they came in under the act of December 25, 1844, and that act makes railroads public corporations. They are so in substance as well as in name. The intention of the act was to place railroads under legislative control. Railroads are, in their nature and business, of a public character. They have taken the place of highways. It never could have been the intention of these grants to part with the right to regulate by general laws a matter of such universal concern.

Being public corporations, railroads are subject to legislative control, like other public corporations. Angell and Ames on Cor. 27 ; *D. College* v. *Woodward*, 1 N. H. 111 ; *Backus* v. *Lebanon*, 11 N. H. 10.

BELL, J.* The first question raised upon the plea in this case, which is in its nature merely a demurrer, is as to the constitutionality of the statute upon which this indictment is founded. Assuming that by its true construction it subjects the plaintiffs in error to indictment, as the State contend, it is said that it subjects the defendants to additional and onerous liabilities, and is, therefore, an infringement of their vested rights.

It is asserted that the legislature have no power to infringe either the express or implied privileges of a corporation, and this principle in the abstract we are inclined to admit. If this case falls within it, it is governed by it. But we think this principle cannot be construed to limit the general powers of legislation, where such legislation merely regulates the existing rights and duties of corporations, or provides new modes of enforcing acknowledged obligations. *Camden & A. R. R. Co.* v. *Briggs*, 2 N. J. 623 ; *Galena & C. H. R. R. Co.* v. *Loomis*, 13 Ill. 548. This statute provides a new mode of enforcing the

* PERLEY, C. J., having been of counsel, did not sit.

admitted duty of these bodies to conduct their business with such care and prudence as not to endanger the lives and limbs of those whom they undertake to transport, and their obligations to compensate those who suffer by their failure to perform their duty, for the damages sustained. It was never a right of these corporations to conduct their business so carelessly as to destroy the lives of their customers, either by any express or implied grant. Their general liability to answer civilly in such cases is beyond question ; and the principle of law, which prevented any redress for personal wrongs in case of the death of either party, was an absurd provision of a barbarous age, which had ceased to exist here in all cases where an action was commenced in the lives of the parties. It would be but a reasonable extension of the same principle, acted upon in the statute, granting the right of prosecuting actions for personal wrongs to the personal representatives, (Comp. Stat. 481, sec. 14,) to have allowed the same representatives to prosecute actions which might have been commenced by the deceased, if sufficient time had elapsed between the injury and his decease. It can make no difference in the principle, that the legislature, in giving this right, have endeavored to protect these corporations from popular prejudice and excitement, and have required the prosecution to be in the form of an indictment, thus forbidding any action unless deemed well founded by a grand jury, and by limiting the amount of the fine to be assessed by the court, and thus preventing the assessment of excessive damages.

Again, it is said that the law is partial; not applicable to common carriers generally, nor even to carriers by steam, but is confined to the case of railroads. The force of this objection is admitted, in cases where a law is made applicable to a class out of a large number, all standing substantially in the same position ; but this law applies to a class, well defined, of common carriers, distinguished by the circumstance that they use, in their business, steam locomotives, driven at a rate of speed known in no other mode of travelling, and attended with risks peculiar to themselves, and far exceeding those of any other carriers. The

same reason for this provision does not apply to any other class of persons, and we think the law is free from just exception on this account.

We regard it as clear, that at common law corporations are liable to indictment for neglect of any public duty. Ang. and Ames on Corporations 392; Arch. Cr. Pr. & Pl. 8; 11 Wend. 539; *Regina* v. *Birmingham R. W.*, 3 B. Q. 223; *State* v. *Dover*, 9 N. H. 468. And there is nothing new in the extension of this liability by statute to other cases. *Reg.* v. *Great North of England Railway*, 11 Shaw's J. P. 21; 9 Q. B. 315. Nor does there seem to us to be any reasonable objection to laws which should make corporations criminally liable for the misconduct of their officers and agents in the discharge of their duties.

If the laws impose duties of a general and public character upon corporations, they must provide modes to compel their performance, and we are unable to see any reason why the mode of prosecution by indictment is open to any objection which would not equally apply to any kind of criminal prosecution. Corporations necessarily transact their business by means of agents. If they are held responsible criminally, it must generally, perhaps always, be for acts or neglects of those agents. If they are thus answerable for negligence and omissions of agents, there seems no well founded objection to their being made liable, in a proper case, for their acts. Towns and counties are at common law responsible for the repair of highways and bridges, and liable to indictment for neglect of their duty in this respect. Turnpike corporations were usually by statute subjected to the same liability, so far as we have heard without objection. And it is somewhat remarkable that a law against towns, in principle like that in question here, was passed in Massachusetts when her jurisdiction was practically extended over the settlements in the territory of this State, probably in 1648 or 1651. Anc. Char. of Mass. 55, ch. 16, sec. 2. " The court, considering the great danger that persons, horses, teams, are exposed to by reason of defective bridges and country highways in this jurisdiction, doth order and declare, that if any person at any time

lose his life in passing any such bridge or highway, after due warning given unto any of the selectmen of the town in which such defect is, in writing, under the hand of two witnesses, or upon presentment in the shire court, of such defective ways or bridges, that then the county or town which ought to secure such ways or bridges shall pay a fine of one hundred pounds to the parents, husband, wife or children, or next of kin of the party deceased."

A similar provision is understood to have remained in force in Massachusetts to the present day. Mass. Rev. Stat. 246, and a similar provision is cited from the statutes of this Province in 1732.

The objection which seems chiefly relied upon, relates to the process and proceedings in the case. It divides into two points : first, that the process issued against the defendant corporation was not such as is required by law ; and, second, that if this should be deemed proper process, yet it was not such a process as, though duly served, authorized the court to enter up a judgment by default.

Our examinations lead us to the conclusion that a summons is the proper and usual process in England to corporations. Sometimes the process there is called a *venire,* but it is always spoken of as in the nature of a summons ; so that we are of the opinion that the process adopted in this case was proper and suitable, no less at common law than by the practice of this State.

If there were a doubt upon its strict propriety at common law, yet our examinations satisfy us that from the early period when the course of proceedings can be traced here, a summons was the uniform course in the case of towns, which were for a long period the only corporations known. We find on the files such a summons to the town of Portsmouth, in 1668, and to Portsmouth and Dover in 1718 and 1719, an order that a summons issue to Portsmouth in 1698, to Dover in 1733, to Exeter in 1735, and to Greenland in 1736. Our search was necessarily very limited, but the cases we found were quite sufficient to satisfy us that a summons has been the usual process to towns from our earliest records.

But it is said that a *distringas* should have issued at the return term, and that no judgment could be entered until the defendant corporation had first appeared ; and it may perhaps be so at common law, since the course, as it is suggested, was to distrain the whole property of the corporation, including the franchise ; and if they would not appear, there was the end of the case and of the corporation. But we have failed to find any evidence that any such process as a *distringas* has ever been in use in New-England. The nearest approach to it is the process of attachment, which, perhaps, was at first a process to compel an appearance, but was almost at once converted by the colonial legislature of Massachusetts to its present use; a seizure of the property of the defendant, " as security to satisfy the judgment which may be recovered."

The *distringas* was in the case of individuals the regular step to an outlawry; and we suppose it too clear to be questioned, that no process of outlawry was ever used or known in this government.

The summons and capias were, so far as we have been able to trace, the only processes known here in criminal cases; and the capias did not lie in the case of a corporation. There being no other process against towns than a summons, it necessarily followed that if the town did not appear, it must have been taken, as was uniformly done in all civil cases, as a confession of the action, and judgment rendered against the town upon their default of appearance.

This was doubtless a departure from the usual course of proceeding at common law ; but it was not a greater departure in criminal than in civil cases, nor in the case of a corporation than in that of individuals. Judgment by default without an appearance was an unusual thing at common law. Writs were issued from the king's offices, and were a source of profit to the king, as well as to every body employed in the administration of the law. No short ways were encouraged, but writ after writ was issued, until the defendant was compelled to appear, or to be outlawed.

The first colonists of New-England were fishermen and far-
mers, their leaders were clergymen, and though they brought
with them a general idea of English law and English liberty, the
Registers of Writs were sealed books to them, as much as they
are to us at this day.   Instead of attempting to follow the forms
of the Register, they devised processes of their own.   The re-
cital of some of them will show that no reverence for any ancient
forms existed among the courts here.

Among the files of 1660 is a writ, of which the following is a
copy :

" *To the Constable of Portsmouth, or his Deputy :*

" You are required to attach the goods, and, for want thereof,
the body of John Pickering, and take bonds of him to the vallew
of 12 li., with sufficient securite for his appearance at the next
commission court held at Portsmouth, then and there to answer
the complaint of Walter Abbott, in an action of debt for seven
pounds, 12*s.* 6*d.*, as may appear by book, with due damages,
and soe make your return under your hand.

" Dated 19th June, 1660.

                              " *Per curia,* ELIAS STILEMAN."

The following is an extract of the summons before referred
to, in a criminal case :

" *To y*ᵉ *Constable of Portsmo., or his Dep'te :*

" You are requ'd, in His Ma'te's name, to somons these un-
dernamed, to answer to their several presentm'ts, the last Tues-
day in September, in Dover, at the Court of Associates, with
the witnesses in the margent.

WITNESSES.

" John Michemore.     George Jones, for his excessive drink-
                         ing."

" Capt. Pendleton.    Robert Mattoone, for excessive drinking,
   Rob. Puddington.      and fighting with Tho. Day."

" Capt. Pendleton.    Martin Hall and Mary Codner, for keep-
   Mr. Tfryer.           ing of compa. at unseasonable times."

" The Selectmen of the town of Portsmouth, for neclecting
to repair the country way between Greenland and Bloody Point,

and for want of weights and measures, and for not fencing their burying-place."

" Hereof you are not to fail, at y$^r$ p'ill. Da. y$^e$ 19 day of August, 1668.

" *Pr.* ELIAS STILEMAN, *Cleric.*"

With the introduction of these original processes, new rules as to the effect of them were adopted, and among these was the judgment by default upon a single summons, where there is no appearance. Such a practice was hardly known in England, and it was long after this that we find the expedient to avoid the tedious common law proceedings to compel an appearance by successive writs, by allowing the plaintiff to enter common bail for the defendant, thus keeping up the appearance of not rendering judgment till appearance.

We regard it as an historical fact, that judgments by default for want of any appearance after due service of a single proper process, was an original invention of New-England, and has existed here since a very early date after the first settlement of the country. And we have not been so fortunate as to trace it to any legislation of the early colonial legislature. We are not aware of any objection to this ancient New-England usage, which is constantly applied in civil cases, in the case of corporations as well as individuals, without inconvenience or complaint. The foundation of the English common law, with its infinite niceties, was nothing more than usage ; and usage here holds as high a place, in our esteem, as usage there. Indeed, we regard the ignorance of the first colonists of the technicalities of the common law as one of the most fortunate things in the history of the law ; since, while the substance of the common law was preserved, we happily lost a great mass of antiquated and useless rubbish, and gained in its stead a course of practice of admirable simplicity, and one which seems to us far better than the most improved codes of practice which have been recently introduced elsewhere.

The idea was suggested in the argument, that the law relating to the service of summons on towns, in case of indictments, was

introduced by statute in 1797. Certainly the practice had been uniform for a century and a half before, and the statute of 1797 was introduced to provide for the general issue and a trial, an idea found inconvenient and useless in practice, and which was changed, and the ancient law restored, in the revisions of 1827 and 1842. It is not in any way consistent with our idea of the history of this matter, to say that the courts could not enter a judgment by default against a town till 1827. So far as we can discover, there was no process ever used to compel an appearance, and judgment was always entered on their default as a confession, if they did not appear, till 1797, after which there was a formal trial, in the defendant's absence, till 1827.

By the Revised Statutes, chap. 54, sec. 2, it is provided, in terms, that towns indicted may be summoned, and by section 3, if they do not appear, the court shall impose a fine, &c. The maxim, *ubi eadem ratio, ibi idem jus*, would well justify the extension of the same rule to the case of other corporations.

By title 21, of the Revised Statutes, entitled " of actions *and process*," chap. 182, sec. 2, it is provided that " original process in said courts shall be summons, attachment and capias, and shall be in the forms prescribed by law," and by sec. 7. In cases where no form of process is prescribed by law, such process shall be made conformable to the forms prescribed in this chapter, so far as the nature of the case will admit.

By chap. 183, sec. 11, it is provided that *any writ or process* against any other corporation or body, (than towns,) may be served by leaving an attested copy thereof with the clerk, treasurer, or one of the directors.

It is said these provisions are limited to civil cases, but they seem not so limited necessarily by any part of the context, and might well be regarded as applying to criminal as well as to civil process, if it were necessary to resort to that view.

The ordinary course at common law of issuing repeated processes of different kinds, to compel an appearance in criminal cases, wholly unknown here, has been regarded in England itself as but an arbitrary rule of practice, not required by the

principles of natural justice. In the case of the *Queen* v. *Simpson*, 10 Mod. 248, 341, and 378, S. C. 1 Sess. Ca. 346, and Gill. 282, it was held that a justice may convict an offender in his absence, upon his default to appear after being duly summoned, in a case where the forms of proceeding are not prescribed by statute. And Ld. *C. J. Parker*, (afterward Ld. *Macclesfield*,) says, " the justices are not obliged to the observance of any rules, unless those of natural justice, which all men are bound to observe. One of those rules is, that the offender should be heard before he is condemned. But this rule must admit of this limitation, viz., unless the party refuse to appear. Natural justice only requires the party should know when and where he is to appear and make his defence ; and if he will then neither appear himself, nor trust his defence to any body else, it is highly reasonable he should be proceeded against, and not reap an advantage from a willful and criminal absence." And he shows " how the common law proceeds in criminal cases, where the party refuses to appear. In case of outlawry for treason or felony, the law interprets his absence as a sufficient evidence of his guilt, and without requiring further proof accounts him guilty of the fact; corruption of blood and forfeiture of estate ensue. In real actions the second default is final and conclusive, and the court, without regarding the merits of the cause, will give judgment that he shall lose his land. Outlawry in lesser crimes or in personal actions, does not, as in the first case, occasion the party to be looked upon as guilty of the fact, or, as in the second case, occasion a judgment for the thing in demand ; yet, it is in its consequences more penal and fatal than if it did. For a restraint of the liberty of the party, if he can be found, the profits of the land, while the outlawry remains in force, and all his goods and chattles forfeited to the king, together with an exclusion from the benefit and protection of the law, follow upon it."

The judgment of outlawry is clearly a judgment rendered upon default of appearance, as the judgment for the land in a real action, and both cases show that there is no principle of the

ment against Batchelder, and in the same writ caused this defend-
common law which forbids a judgment, either in a civil or crimi-
nal case, where the party has been duly served with proper pro-
cess, in his absence.

It is suggested in argument, that in Masachusetts a statute
was passed, in 1851, providing for judgment on default against
corporations, from which the inference is drawn that by the an-
cient practice there no such judgment could be entered. But
we find a different mode of accounting for this statute. In the
Revised Statutes of 1836, a clause was introduced that "no
person indicted for an offence shall be convicted thereof unless
by confession of his guilt in open court, or by admitting the
truth of the charge against him, by his plea or demurrer, or by
the verdict of a jury, accepted and recorded by the court."
Under such a statute no question could arise as to the ancient
and previous practice.

Upon these views we are of the opinion that the process used
was legal, and the judgment duly entered upon the defendants'
failure to appear as upon default.

*Judgment affirmed.*