Hillsborough
No. 7895

THE STATE OF NEW HAMPSHIRE

v.

LUV PHARMACY, INC.
CURTIS CIRCULATION CO., INC.
PENTHOUSE INTERNATIONAL, LTD.

May 31, 1978

*David H. Souter*, attorney general (*Richard B. Michaud*, by brief, and *Peter W. Heed*, orally), for the State.

*Devine, Millimet, Stahl & Branch*, of Manchester (*Joseph M. McDonough III* orally), for the defendants.

BOIS, J.    Indictments were brought against the defendants for violation of the State obscenity statute, RSA 650:2. The defendants allegedly sold obscene material in that they sold the July 1976 issue of *Penthouse* magazine. On January 7, 1977, they filed pleas in abatement challenging the court's jurisdiction. *Keller*, C.J., made an interlocutory order on the pleas on April 19, 1977, and a final order denying the pleas on May 23, 1977. The defendants seasonably excepted to this denial. The court reserved and transferred all questions of law raised by the foregoing exceptions and all other exceptions appearing in the transcript. We affirm in part, and remand.

For the sake of clarity, this opinion analyzes each defendant's claims separately.

### I.  Luv Pharmacy, Inc.
### (hereinafter "Luv")

Luv owns a store in Manchester. Its manager sold a copy of the July 1976 issue of *Penthouse* magazine to a Manchester police officer. Luv was indicted for the sale; a copy of the indictment and a notice to appear was hand-delivered to the manager. The indictment alleges that "Luv Pharmacy, Inc. . . . did knowingly sell obscene material, in that said defendant sold . . . the July 1976 issue of Penthouse Magazine . . . contrary to the form of the Statute. . . ." On January 7, 1977, Luv filed a plea in abatement, moving that the case be dismissed for lack of criminal jurisdiction. After an evidentiary hearing, the court denied the plea.

Luv argues that RSA 300:11 governs service of process in the instant proceeding. This statute provides methods of serving process "in any suit, action or proceeding, . . . [and of serving] any notice or demand required or permitted by law to be served on a foreign corporation. . . ." RSA 300:11(a) and (b) regulate service of process on registered agents of foreign corporations. (Under RSA 300:3(b), any

foreign corporation registered to do business in New Hampshire must maintain a registered agent in this State.) If a foreign corporation transacting business in this State fails to appoint or maintain a registered agent upon whom legal process can be served, then the secretary of state is authorized to accept service for the corporation. RSA 300:11(c).

Luv has no registered agent in New Hampshire, but no substituted service of process was made on the secretary of state. Defendant submits that this failure to make substituted service as per RSA 300:11(c) deprives the court of in personam jurisdiction. We disagree.

Defendant misreads the statute. By its very terms, RSA 300:11 permits service of process by means other than those it specifies. The first sentence of RSA 300:11 provides that: "Services of process . . . may be made on [a foreign] corporation as otherwise provided by law. . . ." RSA 300:13 reiterates that: "The method of service provided by this chapter is not exclusive, and service on [foreign] corporations may be made in any other manner provided by law."

■ One statute providing an alternative method of service is RSA 510:14. *In re Tech Consolidated, Inc.*, 329 F. Supp. 27, 31 (D.N.H. 1971); *see LaBonte v. American Mercury Magazine, Inc.*, 98 N.H. 163, 168, 96 A.2d 200, 203 (1953); *Taylor v. Klenzade Products, Inc.*, 97 N.H. 517, 522, 92 A.2d 910, 914 (1952). Service under RSA 510:14 may be made "upon any agent, overseer or other person having the care of any of the property or charge of any of the business of the corporation." As we noted above, service in the instant case was accomplished by hand-delivering a copy of the indictment and a notice to appear to the manager of Luv's Manchester store. The manager himself agreed at the hearing below that he was "the employee of Luv's that has the greatest authority of any employee of Luv's in New Hampshire." We hold that service on him satisfied RSA 510:14 and thereby met the service-of-notice requirements of in personam jurisdiction.

Luv has neither briefed nor argued any other exception to the denial of its plea in abatement. We therefore affirm the denial.

### II. Penthouse International, Ltd.
### (hereinafter "Penthouse")

Penthouse is a Delaware corporation with its principal place of business in New York. It is not registered to do business in New Hampshire and has not appointed an agent to receive service of process here. The indictment entered against Penthouse charges that it

"did purposely sell obscene material by the conduct of another for whom it is accountable, in that the defendant's conduct of publishing the said obscene material resulted in the said sale of this material within the State of New Hampshire. . . ." A copy of this indictment and a notice to appear was served on the secretary of Penthouse's executive vice-president in New York. Additionally, substituted service was made on the New Hampshire Secretary of State pursuant to RSA ch. 300. On January 7, 1977, Penthouse filed a plea in abatement, moving that the case be dismissed for lack of criminal jurisdiction. After an evidentiary hearing, the plea was denied.

Penthouse challenges the court's in personam jurisdiction as well as its territorial jurisdiction. We deal with these challenges seriatim.

### A. In personam jurisdiction.

The requirement that a court possess in personam jurisdiction actually comprises two components: service of notice must be proper, and there must exist "those 'affiliating circumstances' without which the courts of a State may not enter a judgment imposing obligations on persons. . . ." *Hanson v. Denckla*, 357 U.S. 235, 245–46 (1958) (footnotes omitted). Penthouse claims only that "affiliating circumstances" are lacking. This contention must be rejected.

In the past, a court could render a binding judgment on a defendant only if the defendant were physically present in the jurisdiction. *International Shoe Co. v. Washington*, 326 U.S. 310 (1945); 1 C. Alexander, The Law of Arrests § 26d (1949); *see State v. Keating*, 108 N.H. 402, 236 A.2d 684 (1967) (by implication); 22 C.J.S. *Criminal Law* § 144 (1961). In the civil area this requirement was abolished by *International Shoe supra*, which substituted the requirement that if the defendant "be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Id.* at 316. We have adopted the rationale of that case "without limitation." *Roy v. North American Newspaper Alliance*, 106 N.H. 92, 205 A.2d 844, 846 (1964).

Penthouse urges that the minimum contacts test of *International Shoe* and its progeny applies to this case. However, we are unable to locate, and the parties have failed to cite, any case law applying this test to criminal proceedings. Nor are we convinced that the minimum contacts analysis could or should be applied to all criminal proceedings. Application of this standard to natural persons charged with criminal offenses might mean that a criminal judgment could be rendered against a natural person even if he were absent from the

jurisdiction. Such result might render nugatory, for example, RSA ch. 612, our extradition statute. It might also raise serious constitutional questions.

█ Nonetheless, corporations do pose a special problem. A corporation is a jural person, but not a person in fact. It is an artificial creature, acting only through agents, *Boston, Concord & Montreal R.R. v. State*, 32 N.H. 215, 227 (1855), and therefore potentially "present" everywhere it does business. *March v. Eastern R.R. Co.*, 40 N.H. 548, 578 (1860). For this reason, trying to pinpoint the State in which a corporation is physically present, for purposes of determining criminal jurisdiction, is like trying to handcuff a shadow.

We find instructive the discussion in *International Shoe supra* of corporate presence. The Supreme Court therein stated:

> Since the corporate personality is a fiction, although a fiction intended to be acted upon as though it were a fact, . . . it is clear that unlike an individual its "presence" without, as well as within, the state of its origin can be manifested only by activities carried on in its behalf by those who are authorized to act for it. To say that the corporation is so far "present" there as to satisfy due process requirements, for purposes of . . . the maintenance of suits against it in the courts of the state, is to beg the question to be decided.

*Id.* at 316.

It should also be remarked that because a corporation does not consist of any one "body," it seemingly cannot be extradited. *See* RSA ch. 612.

The Supreme Court in *Shaffer v. Heitner*, 433 U.S. 186, n.19 (1977), recently noted (in the context of civil jurisdiction) that: "The differences between individuals and corporations may, of course, lead to the conclusion that a given set of circumstances establishes State jurisdiction over one type of defendant but not over the other."

█ We hold that Penthouse is sufficiently "present" in New Hampshire to be subject to prosecution for the alleged offense. At the hearing on its plea in abatement, Penthouse's own circulation manager testified that the defendant not only publishes *Penthouse* magazine but also is involved in its distribution. Curtis Circulation Company determines allotments for all of Penthouse's wholesalers throughout the nation, and then sends Penthouse shipping labels

with the names and addresses of the wholesalers and the amount of copies that each is to receive. Penthouse then sends these shipping labels to its Iowa printer. The printer affixes the labels to bundles of the magazine, which are then trucked to the local wholesalers, such as Manchester News, Inc., for distribution.

In addition, although Penthouse's circulation manager characterized Curtis Circulation Company as an independent contractor, he also described it as "our representatives"; "[w]e deal with them on a day-to-day basis"; "[t]hey are our eyes and ears outside." As observed in *Mulhern v. Holland America Cruises*, 393 F. Supp. 1298, 1302 (D.N.H. 1975), "with the liberalization of due process criteria, the jurisdictional distinction between agents and independent contractors has begun to fade." *See Curtis Publishing Co. v. Golino*, 383 F.2d 586, 591 (5th Cir. 1967) ("By a proper degree of care, the publisher could eliminate nearly all physical contacts, other than circulation and correspondence, with all but one state."); *Commonwealth v. Beneficial Finance Co.*, 360 Mass. 188, 227, 275 N.E.2d 33, 57 (1971) ("it is inconsistent with the inherent power of a court to prosecute criminal offenders to insulate the corporation from liability on the basis of the manner in which the corporation generally runs its affairs.").

That Penthouse maintains no office in New Hampshire is not dispositive. *See Curtis Publishing Co. v. Golino supra; David v. National Lampoon, Inc.*, 432 F. Supp. 1097 (D.S.C. 1977); *Commonwealth v. Beneficial Finance Co.*, 360 Mass. 188, 275 N.E.2d 33 (1971); *Roy v. North American Newspaper Alliance*, 106 N.H. 92, 95–96, 205 A.2d 844, 846–847 (1964).

Penthouse is charged with having (vicariously) committed the offense of purposely selling obscene materials in this State. Its alleged commission of acts constituting an offense within this State is a compelling "circumstance of affiliation" with New Hampshire. *See Commonwealth v. Beneficial Finance*, 360 Mass. at 227–28, n.8, 275 N.E.2d at 56–57, n.8 (1971).

### B. Territorial jurisdiction.

Penthouse takes exception not only with New Hampshire's exercise of jurisdiction over the person, but also with its exercise of jurisdiction over the offense ("territorial jurisdiction"). For a court to adjudicate a dispute, criminal or civil, it needs both in personam and territorial jurisdiction. 21 Am. Jur. 2d *Criminal Law* § 378 (1965); 22 C.J.S. *Criminal Law* § 108 (1961). We hold that the trial court does have territorial jurisdiction, under RSA 625:4.

Defendant's first challenge to the court's territorial jurisdiction focuses on the following provisions of RSA 625:4:

I. Except as otherwise provided in this section, a person may be convicted under the laws of this state for any offense committed by his own conduct or by the conduct of another for which he is legally accountable if:

(a) either conduct which is an element of the offense or the result which is such an element occurs within this state;

. . .

II. Paragraph I(a) does not apply if:

. . .

(b) causing a particular result is an element of an offense and the result is caused by conduct occuring outisde the state which would not constitute an offense if the result had occurred there.

Defendant submits that the secion II(b) saving clause applies and requires the State to prove that either the publication or the sale of the July 1976 issue of *Penthouse* in fact violated the obscenity laws of New York (where penthouse's principal offices are located). Because the State failed to prove this, defendant argues, the plea in abatement should be granted.

The language in section II(b) is less than crystal clear. Read narrowly, the "conduct" to which II(b) refers could be taken to mean the legally operative conduct, that is, the conduct for which a person other than the actor could be held legally accountable. Under this interpretation, "conduct" would *not* include the conduct of the person legally accountable for the conduct of another. Translated into the terms of this case, the conduct to which section II(b) refers could be the alleged conduct of Luv, not the alleged conduct of Penthouse.

■ We do not, however, read RSA 625:4 II(b) this narrowly. The draftsmen of the statute commented that II(b) is "designed to give limited effect to foreign law by withholding jurisdiction when the conduct is legal by the law of the place where it takes place." Report of Commission to Recommend Codification of Criminal Laws, proposed RSA 570:4, Comments (1969). This intent dictates that the saving clause be read to apply not only to the legally operative conduct, but also to the conduct of the defendant that allegedly gives rise to its legal accountability. In other words, II(b) applies not only to Luv's alleged conduct, but also to Penthouse's.

This interpretation of the clause accords with *Hardy v. Betz*, 105 N.H. 169, 175, 195 A.2d 582, 585 (1963), wherein we recognized that " '[t]he criminal law of a state or nation has no operation or effect beyond its geographical or territorial limits.' "

■ Luv's alleged conduct—sale of obscene material—occurred in New Hampshire. Thus, section II(b) as applied to Luv's alleged conduct does not limit our territorial jurisdiction. However, the conduct of Penthouse that allegedly makes it legally accountable for Luv—publication and distribution of the magazine—occurred in New York. It therefore would be subject to our criminal jurisdiction only if the State can prove that there exists a New York statute (or statutes) that would proscribe publication and distribution of obscene materials. The State may prove this by showing that there is a New York statute directly so providing. Alternatively, the State may meet its burden under RSA 625:4 II(b) by showing that there is a New York statute criminalizing the sale of obscene materials and that Penthouse by its activities would be subject to criminal penalties as an aider or abettor of, or as legally accountable for, such sale.

■ In the instant case, the trial court's denial of Penthouse's plea in abatement represents an implied finding that New York law would in fact penalize such conduct as Penthouse's. *See Beaudoin v. Beaudoin*, 118 N.H. 325, 386 A.2d 1261 (1978); *Cushing v. Thomson*, 118 N.H. 292, 386 A.2d 805 (1978). This finding is amply supported by the evidence. At the hearing on the plea, legal counsel for Penthouse, testifying on behalf of the defendants as an expert witness on New York and New Jersey law, stated that "if there is a sale or distribution or publication of obscene material, and there is a finding that it is obscene as defined in New York, and, respectively in New Jersey," then the allegations in the indictments "would support a conviction." This testimony, from defendants' witness, supplies a firm foundation for the trial court's implied finding that Penthouse's New York activities would have subjected it to prosecution in New York had the ultimate sale in this case taken place in New York. RSA 625:4 II(b) thus does not insulate Penthouse from the instant prosecution. RSA 625:4 I(a) controls, and provides territorial jurisdiction.

Penthouse also challenges its legal accountability for the conduct of Luv under New Hampshire law. According to RSA 626:8 I, "[a] person is guilty of an offense if it is committed by . . . the conduct of another person for which he is legally accountable. . . ." RSA 626:8 II provides: "A person is legally accountable for the conduct

of another person when: . . . (c) he is an accomplice of such other person in the commission of the offense." A person is an accomplice of another person in the commission of an offense if "with the purpose of promoting or facilitating the commission of the offense, he solicits such other person in committing it, or aids or agrees or attempts to aid such other person in planning or committing it. . . ." RSA 626:8 III(a). According to Penthouse, there was insufficient evidence before the trial court for the latter to conclude that Penthouse could be an accomplice of Luv under New Hampshire law. We rule otherwise.

The relevant portions of RSA 626:8 were derived from section 2.06(3) (a) (i), (ii) of the Model Penal Code (hereinafter MPC), 10 Uniform Laws Annotated 470–71 (1974). Report of Commission to Recommend Codification of Criminal Laws, Proposed RSA 571:8, Comments (1969). These portions of the MPC are themselves based on and substantially similar to section 2.04(3)(a)(1), (2) of the first tentative draft of the MPC. Model Penal Code § 2.04(3)(a)(1), (2) (Tent. Draft No. 1, 1956). In comments to this section of the tentative draft, the draftsmen explain that the accomplice-liability provision

> represents, it is believed, an exhaustive description of the ways in which one may purposely enhance the probability that another will commit a crime. So long as a purpose to further or facilitate is present, there is no risk to innocence; nor does there seem to be occasion to inquire about the precise extent of influence exerted on the ultimate commission of the crime.
>
> . . .
>
> . . . Conduct which knowingly facilitates the commission of crimes is by hypothesis a proper object of preventive effort by the penal law, unless, of course, it is affirmatively justifiable. . . . when a true purpose to further the crime is lacking, the draft requires that the accessorial behavior substantially facilitate commission of the crime and that it do so to the knowledge of the actor.

*Id.* At Comment 3.

The allegation in the indictment plus the testimony at the hearing below sufficed to support a finding that the complicity standard of RSA 626:8 was met, at least for purpose of establishing our jurisdiction in the first instance. As stated above, Penthouse not only publishes *Penthouse* magazine but also aids in its distribution. Its

own officer testified that Penthouse forwards shipping labels with names and addresses of wholesalers to its Iowa printer, with instructions to ship $\underline{X}$ number of copies to each distributor. Penthouse knows and intends that certain New England wholesalers will distribute its magazine to retailers. It may be found that Penthouse knew and, to stay in business, intended that a sale like the one by Luv Pharmacy in the present case take place. Realistically, the only use to which a wholesaler will put bundles of *Penthouse* is to distribute them to a retailer, who in turn will sell them to retail customers. *See Direct Sales Co. v. United States*, 319 U.S. 703, 709–11 (1943); *United States v. Interstate Engineering Corp.*, 288 F. Supp. 402, 428–30 (D.N.H. 1967) (knowing facilitation of crime by sale of supplies constitutes "aiding and abetting"). Moreover, Penthouse's financial success depends on the continuation of sales similar to the instant sale of *Penthouse. See* Note, *Falcone Revisited: The Criminality of Sales to an Illegal Enterprise*, 53 Colum. L. Rev. 228, 240 n.67 (1953).

We note that the indictment against Penthouse charges that it is accountable for the sale in New Hampshire simply because it publishes the magazine. We might find troublesome the proposition that publication of an allegedly obscene magazine per se renders the publisher an accomplice of a subsequent retail seller. However, the record contains testimony that Penthouse does more than publish the magazine in question. A hearing on a plea in abatement may include evidence of facts outside the indictment and even outside the record. *State v. Hampton*, 113 R.I. 203, 205, 319 A.2d 364, 366 (1974); *State v. Howe*, 219 A.2d 116, 119 (Me. 1966); 2 Wharton Criminal Procedure § 351 (12th ed. 1975). Thus, we need not reach the question whether mere publication can make a publisher an accomplice of a retailer.

Of course, nothing in this opinion should be taken as a decision on the merits. Rather, all we decide today is that our courts possess jurisdiction to hear this prosecution.

It should also be remarked that the indictment against Penthouse does not express that Penthouse's alleged legal accountability is based on RSA 626:8 II(c), the "accomplice" clause. Nor does the indictment specify just how Penthouse is alleged to have incurred accomplice liability. The defendant has made no challenge to the indictment itself, but rather has assumed that it is being charged as an accomplice; we therefore have no occasion to pass on the facial validity, or sufficiency, of the indictment. We do wish to point out, however, that

had there been any confusion about what the State is alleging, such confusion could have been obviated by use of an indictment more clearly charging a defendant with an offense by virtue of his accountability for another. *Cf.* the attorney general's Law Enforcement Manual, page 78 (1970).

### III. Curtis Circulation Co., Inc.
### (hereinafter "Curtis")

Curtis is a corporation with offices in New Jersey and Pennsylvania. It is not registered to do business in New Hampshire and has not appointed an agent to receive service of process here. The indictment entered against Curtis charges that it "did purposely sell obscene material by the conduct of another for whom it is accountable, in that the defendant's conduct of distributing the said obscene material resulted in the sale of this material within the State of New Hampshire. . . ." A copy of this indictment and a notice to appear was served on the managing agent of Curtis in New Jersey. Additionally, substituted service was made on the New Hampshire Secretary of State pursuant to RSA ch. 300. On January 7, 1977, Curtis sought abatement of the proceedings, claiming the court lacks criminal jurisdiction. This plea was denied after hearing.

Curtis' contentions are similar to those of Penthouse: it challenges the court's in personam and territorial jurisdiction.

The record contains testimony from defendant's witness, the circulation manager of Penthouse, that Curtis' representatives "visit the local wholesalers in this area," although not at any "regular, set time. . . ." Apparently these agents solicit, or are in some way involved with, wholesale orders of the magazine. Curtis makes up shipping labels for Penthouse, indicating which wholesalers are to receive specified numbers of copies of *Penthouse.* The record does not reveal the precise nature of the New Hampshire activities of Curtis' agents, but Curtis does admit, in a brief filed with this Court, that "[t]he evidence in the transcript is to the effect that Curtis was the national distributor and distributed locally to Manchester News, which, in turn, distributed to Luv."

We hold that when a defendant knowingly distributes an allegedly obscene magazine in New Hampshire and sends its agents into this State to facilitate said distribution, it is subject to the in personam jurisdiction of our courts if prosecuted for complicity in the subsequent retail sale of the magazine. *See Commonwealth v. Beneficial Finance Co., supra* at 227–28, n.8, 275 N.E.2d at 56–57,

n.8 (1971); *Roy v. North American Newspaper Alliance, Inc.*, 106 N.H. at 96–97, 205 A.2d at 847–48 (1964). That its agents enter the State only sporadically is not dispositive. *Id.* Curtis' objection to the exercise of in personam jurisdiction was therefore properly denied.

Curtis' challenge to our exercise of *territorial* jurisdiction over the offense is two-fold. First, Curtis argues that it comes within the saving clause of RSA 625:4 and therefore is protected from prosecution. Second, Curtis argues that it could not be found legally accountable for Luv's conduct under RSA 626:8.

As for Curtis' first argument, we agree that RSA 625:4 II(b) applies not only to Luv's alleged conduct (which occurred in New Hampshire) but also to Curtis'. Thus, to the extent the State wishes to rely on Curtis' out-of-State activities in the present proceeding the State must prove that there exist statutes in the States in which Curtis' alleged activities occurred that proscribe distribution of obscene materials. The State may prove this by showing that there are statutes in those other States directly criminalizing distribution of obscene materials. Alternatively, the State may meet its burden under RSA 625:4 II(b) by showing that there are statutes in those States criminalizing the sale of obscene materials and that Curtis by its activities would be subject to criminal penalties as an aider or abettor of, or as legally accountable for, such sale.

As indicated above, legal counsel for Penthouse testified on behalf of all defendants as an expert witness on New York and New Jersey law. He stated that under New Jersey law Curtis would have been subject to criminal prosecution had the ultimate sale in this case taken place in New Jersey. We hold that this testimony supports the trial court's implied finding that RSA 625:4 II(b) does not insulate Curtis from prosecution for its New Jersey activities.

Curtis is located in Pennsylvania as well as in New Jersey, but there was no testimony about whether any of Curtis' Pennsylvania activities would be criminal under Pennsylvania law had the ultimate sale in this case occurred in Pennsylvania. We remand for a determination of whether the State intends to rely on any of Curtis' Pennsylvania activities in this prosecution. If the State intends to do so, it must first prove that Pennsylvania law proscribes the distribution of obscene materials. *See* RSA 519:32.

As for Curtis' argument that it is not subject to our territorial jurisdiction because it is not legally responsible for Luv's conduct under New Hampshire law, we think that our discussion of

Penthouse's accomplice liability supplies an a fortiori answer to Curtis. Curtis knows that the New Hampshire wholesaler whose orders it solicits and/or receives will distribute *Penthouse* to such retailers as Luv. Circulating magazines is Curtis' business; it may be found to have intended and attempted to facilitate and promote the retail sale of *Penthouse*, among other magazines. It therefore comes within the scope of RSA 625:4 and ch. 626, and so is subject to our territorial jurisdiction in regard to its New Hampshire activities. *See Direct Sales Co. v. United States*, 319 U.S. 703 (1943); *United States v. Sherpix, Inc.*, 512 F.2d 1361, 1372 (D.C. Cir. 1975) (distributor of film, as an aider and abettor, was accountable for the conduct of another charged with the offense of knowingly screening the allegedly obscene film); Note, *Falcone Revisited: The Criminality of Sales to an Illegal Enterprise supra.*

We of course say nothing about the merits of the present proceeding. All we hold is that our courts possess jurisdiction to hear this prosecution. It should also be remarked, as we pointed out above, that our resolution of this appeal would have been facilitated by a more specific indictment.

We remand for further proceedings consistent with this opinion.

*Exceptions overruled in part; remanded.*

LAMPRON, J., did not sit; the others concurred.