## ZULCH ET AL. v. ROACH, SHERIFF, ET AL.

(No. 854; Decided September 29th, 1915; 151 Pac. 1101.)

EXTRADITION—FUGITIVE FROM JUSTICE—HABEAS CORPUS—PROCEED-
INGS — SCOPE OF INQUIRY — HEARING — EVIDENCE — STATEMENT OF
TIME OF OFFENSE—WHEN STATEMENT OF TIME CONCLUSIVE—
WHEN NOT CONCLUSIVE—PRESENCE OF ACCUSED IN DEMANDING
STATE AT TIME OF ALLEGED OFFENSE—EVIDENCE INSUFFICIENT TO
RELEASE.

1. The presence of accused in the demanding state at the time
   of the commission of the crime or the doing of some overt
   act therein which is, and is intended to be, a material step
   toward the accomplishment of the crime, is necessary to
   warrant extradition, and whether so present may be in-
   quired into on habeas corpus proceedings.

2. The time of the commission of a crime charged by complaint
   or indictment is conclusive in habeas corpus proceedings
   brought to prevent extradition, unless there be evidence
   tending to show that the date so alleged is not the true or
   exact date.

3. Where in habeas corpus proceedings brought by defendants
   to resist extradition on charges of fraud and conspiracy,
   it is admitted that the accused were not in the demanding
   state at the time alleged in the indictment as the date of
   the commission of the crimes charged, but were therein
   prior to the date charged and engaged in the business in
   which the alleged frauds were perpetrated, they are not
   entitled to release as questions touching their guilt or in-
   nocence cannot be raised on habeas corpus.

ORIGINAL proceedings in habeas corpus by Harry Zulch
et al. against Frank B. Roach, sheriff of Laramie County,
et al., to resist extradition.

The facts are stated in the opinion.

*Hilliard S. Ridgely,* for plaintiffs.

An indictment failing to set out some particular date
when the crime was committed is fatally defective, even
if it otherwise sufficiently charges the commission of a
crime.   (Barnes v. State, 42 Tex. Cr. Reps. 297, 59 S. W.
882.)   Every material fact stated in an indictment must be
alleged to have been done on a particular day and at a par-

ticular place. A day certain must be stated. The want of sufficient certainty in the indictment respecting the· time, place or evidence, which is material to support the charge, will cause the judgment to be arrested. (Mau-Zau-Mau-Ne-Kah v. U. S., 1 Pinney, 124, 39 Am. Dec. 279.)

*Donzelman & Mentzer, D. A. Preston,* Attorney General, *Wilfred C. O'Leary,* Deputy Attorney General, and *William G. Galbraith,* for defendants.

In Michigan an imperfect statement of time in an indictment will not render it insufficient. (Mich. Stats., Sec. 15090.)ı Amendments may be allowed. (Mich. Stats., Sec. 15093.) Nor shall the omission of the words "feloniously" or "with force and arms" or the words "contrary to the form of the statutes," etc. (Mich. Stats., Sec. 15079.) One who commits a crime within the State of Michigan and leaves the state, refusing to return, when prosecuted therefor, is a fugitive from justice. (Mich. Stats., Sec. 15111; People v. Kuhn, 67 Mich. 463; People v. Clement, 72 Mich. 116; People v. Stockwell, 135 Mich. 341.) One committing an overt act within the state, which is and is intended to be a material step towards accomplishing a crime and then absents himself from the state and does the rest elsewhere, becomes a fugitive from justice for extradition purposes, when the crime is complete, if not before (Taylor v. Wise, 126 N. W. 1126; Christopher Strasshein, Sheriff, v. Milton Daily, 31 U. S. Supreme Court Reps. 558) ; and a showing that the accused was in the state in the neighborhood of the time alleged in the indictment will be sufficient on habeas corpus. (Idem, 558 and 560.) An information may be amended to conform to proof, as to time of offense, when time is not of the essence. (People v. Hoffman, 142 Mich. 531; People v. Nichols, 159 Mich. 355; Howell's Mich. Stats., p. 5796, Sec. 15090; Ill. v. Pease, 28 Supreme Court Reps. 61; Pomroy Arch. C. P. & P. 363.) The courts will not inquire into the propriety of the governor's decision in· granting extradition, where the evidence is conflicting. (*Ex· parte* Dennison, 101 N. W. 1045.) Requisitions will be

granted in cases of misdemeanor. (*Ex parte* Reggel, 5 Supreme Court Reps. 1152; Commonwealth v. Dennison, 24 How. 99.) In the absence of a statute prosecutions for conspiracy will be conducted according to the common law. (State v. Bartlett, 30 Me. 135; State v. Ripley, 31 Me. 389; Hazen v. Commonwealth, 23 Pa. St. 355; State v. Noyse, 25 Ver. 415.) The indictment sufficiently charges a conspiracy to cheat and defraud. (Wharton's Precedents, Vol. 2, pp. 612, 131 and 132.) The purpose of extradition is to prevent criminals from seeking refuge in other states. (Leonard v. Zweifel, 151 N. W. 1054.) The sufficiency of the requisition is in the first instance a question for determination by the governor of the asylum state. (People v. Pinkerton, 77 N. Y. 241; *In re* Kingsbury, 106 Mass. 223; *Ex parte* Regal, 114 U. S. 653; Applegard v. Commonwealth, 27 Supreme Court Reps. 122.) The form of proceedings and process in criminal cases may be prescribed by each of the states. (*In re* Hooper, 52 Wis. 699.) Whether the information charges an offense is a question for the demanding state or territory. (*In re* Greenough, 31 Vt. 279; Matter of Voorhees, 32 N. J. Laws, 141; *Ex parte* Sheldon, 34 Ohio State, 319.) Only a limited inquiry will be made into the sufficiency of the indictment on habeas corpus proceedings. (*Ex parte* Ruf, 89 Pac. 605.) A substantial charge of crime is sufficient. (Roberts v. Riley, 116 U. S. 80.) Technical omissions are questions for the courts of the demanding state. (*Ex parte* Swearingen, 113 S. C. 74.) The finding of a committing magistrate will not be disputed on habeas corpus. (State v. Haugen, 134 N. W. 167.)

Beard, Justice.

In this case the plaintiffs were arrested and held in custody by the defendants upon two warrants issued by the Governor of this state on requisitions issued by the Governor of the State of Michigan. Seeking to avoid extradition, plaintiffs applied to the Chief Justice of this court for a writ of habeas corpus, which he issued and made returnable

before the court. They were charged on two complaints in the court in Michigan. In one case they, with others, were charged (in substance and briefly stated) with having conducted and transacted business under an assumed and fictitious name, to-wit, "Acme Cloak and Suit House," without having filed the certificate required by the statutes of Michigan. The time at which the crime is alleged in the complaint to have been committed is "on the 14th day of August, A. D. 1915, and for six months preceding said 14th day of August, A. D. 1915." In the other complaint, they, with others, are charged (in substance and briefly stated) with entering into a conspiracy to cheat and defraud divers persons named and others, by means of false pretenses and subtle means and devices, and alleged that they did on the 14th day of August, 1915, and for upwards of six months prior thereto by such means cheat and defraud persons named and others unknown out of $5,000.

In the case first mentioned, in addition to the complaint which is sworn to, other affidavits were taken by the justice before whom the complaint was made to the effect that the Acme Cloak and Suit House had been doing business from about August 1, 1914, up to about August 28, 1915, when the last of the members of the alleged Acme Cloak and Suit House absconded.

In the other case similar affidavits accompany the complaint, to the effect that the fraudulent conduct and acts, if such they were, of the alleged conspirators covered a period of about a year prior to August, 1915. On the hearing in this court the plaintiffs testified in their own behalf and other witnesses were also produced, and on the evidence before the court we think it fairly appears that Harry Zulch and Emily Zulch came to Cheyenne, Wyoming, January 20, 1915, registering at a hotel by the name of Zimmerman; that they were in Michigan from in June, 1914, to the latter part of December, 1914, and were there connected with the Acme Cloak and Suit House. Floyd Weddle was in Michigan from October, 1914, to the last of February, 1915, with the Acme Cloak and Suit House, and came to Cheyenne in

February, 1915. Herbert McCaffery was in Michigan from June, 1915, to August 10, 1915, and worked for the Acme Cloak and Suit House three weeks, and came to Cheyenne August 18, 1915. None of the plaintiffs were in Michigan August 14, 1915.

It is the contention of counsel for the plaintiffs that as it conclusively appears from the evidence that plaintiffs were not in Michigan on August 14, 1915, they could not have committed the crime charged in either of the complaints. We cannot agree with that contention. We are of the opinion that the correct rule is, that the presence of the accused in the demanding state at the time of the commission of the crime, or the doing of some overt act therein which is and ·is intended to be a material step toward the accomplishment of the crime is necessary to warrant their extradition; and whether they were so present may be inquired into on habeas corpus proceedings. In the absence of evidence to the contrary, the time of the commission of the crime as charged in the complaint or indictment is conclusive in habeas corpus proceedings instituted to prevent extradition; but when there is evidence reasonably tending to show that the date so alleged is not the true or exact date of the commission of the criminal acts, the time alleged in the complaint or indictment is not conclusive. These propositions, we think, are supported by the authorities. In Hyatt v. Corkran, 188 U. S. 691-711, 23 Sup. Ct. 456, 459, 47 L. Ed. 657, it is said: "The indictments in this case named certain dates as the times when the crimes were committed, and where in a proceeding like this there is no proof or offer of proof to show that the crimes were in truth committed on some other day than those named in the indictments, and that the dates therein named were erroneously stated, it is sufficient for the party charged to show that he was not in the state at the times named in the indictments, and when those facts are proved so that there is no dispute in regard to them, and there is no claim of any error in the dates named in the indictments, the facts so proved are sufficient to show that the person was not in the

state when the crimes were, if ever, committed." In Strass-
heim v. Daily, 221 U. S. 280, 31 Sup. Ct. 558, 55 L. Ed.
735, Daily was indicted in Michigan for bribery and also
for obtaining money by false pretenses, and was arrested in
Illinois on extradition warrant. He sought to be discharged
on habeas corpus. On the proceeding in habeas corpus the
District Judge discharged him, and an appeal was taken to
the U. S. Supreme Court, where the judgment was re-
versed and the prisoner remanded. In the opinion it is
stated: "The bribery is laid under a *videlicet* as taking
place on May 13, 1908; the false pretenses are averred to
have been made May 1, of the same year. On both of these
dates the defendant was in Chicago." After discussing the
evidence and law at length, it is said: "On the other hand,
however, we think it is plain that the criminal need not do
within the state every act necessary to complete the crime.
If he does there an overt act which is and is intended to be
a material step toward accomplishing the crime, and then
absents himself from the state and does the rest elsewhere,
he becomes a fugitive from justice, when the crime is com-
plete, if not before." In concluding the opinion the court
said: "We have given more attention to the question of
time than it is entitled to, because of the seeming exactness
of the evidence. But a shorter and sufficient answer is to
repeat that the case is not to be tried on *habeas corpus,* and
that when, as here, it appears that the prisoner was in the
state in the neighborhood of the time alleged it is enough."
In *Ex parte* Hoffstot, 180 Fed. 240, Hoffstot was indicted
for conspiracy to bribe members of the council of the City
of Pittsburg, Pennsylvania. In the indictment the crime
was alleged to have been committed on the 3rd day of June,
1908. It was admitted that Hoffstot was in New York, and
not within the State of Pennsylvania on the 3rd day of
June, 1908; that he was in Pittsburg in the latter part of
April, on the 28th of May, and on the 29th of June, 1908;
and that he was absent from Pennsylvania the rest of those
months. The evidence which the court held sufficient to
warrant the extradition of Hoffstot was that of the assist-

ant district attorney, who testified that there was evidence
before the grand jury, upon which the indictment for con-
spiracy was found, as to transactions tending to prove the
conspiracy which extended over a period from about the 1st
of May to about the first of July, 1908. He was asked
whether there was any evidence before the grand jury
tending to show any act on the part of Hoffstot committed
in the State of Pennsylvania when he was physically present
there at any time during the period mentioned, to which he
at first replied that he did not think there was. He subse-
quently testified upon further examination that there was
circumstantial evidence as to acts by him while he was·
within that state during that period; that there was no
direct, positive testimony by any one who saw him there,
but there was circumstantial testimony that he was there.
On that state of facts the court said: "This evidence is
undoubtedly vague; but I think the substantial effect of it
is that, while there is no specific evidence by an eye-witness
that Hoffstot was in Pennsylvania on any particular day on
which any act in furtherance of this conspiracy was done,
there was circumstantial evidence from which a jury would
be justified in drawing the inference that he was there on
such day. Now, if it shall be proved that a conspiracy was
entered into by Mr. Hoffstot, and circumstantial evidence
shall be offered sufficient to authorize a jury to draw the
inference that he was present in Pennsylvania when any
act material in carrying out the objects of the conspiracy
was done, I think he would properly be held to have been
within the State of Pennsylvania at the time that the crime
charged in the indictment was committed, and that his sub-
sequent return from that state to New York would render
him a fugitive from justice within the meaning of the
United States Constitution and statute upon that subject."
The case was appealed to the Supreme Court of the United
States and was affirmed without opinion in 218 U. S. 665,
31 Sup. Ct. 222, 54 L. Ed. 1201. (See also *In re* Palmer,
100 N. W. 996, 138 Mich. 36, and State ex rel. Rinne v.
Gerber, 111 Minn. 132; 126 N. W. 482.)

The evidence in the case at bar is much stronger and much more direct and satisfactory than that in the Hoffstot case. Here the parties admit that they were in Michigan while the business of the Acme Cloak and Suit House was being conducted and carried on and that they were in some manner engaged in the conduct of that business. If, as charged, they had entered into a conspiracy by that means to cheat and defraud and in pursuance of such conspiracy had committed acts while within that state which culminated in fraudulently obtaining money as alleged, and afterwards left the State of Michigan, they must be held to be fugitives from justice. Whether there was a conspiracy, or whether the business of the Acme Cloak and Suit House was fraudulent or whether they were so connected with it as to render them guilty on either charge, are questions which cannot be tried in this proceeding. We are of the opinion that the writ should be dismissed and the plaintiffs remanded to the custody of the defendants on each of the warrants, and it is so ordered.          *Writ dismissed and plaintiffs remanded.*

POTTER, C. J., and SCOTT, J., concur.