166 N.J. Super. 562 (1979)
400 A.2d 138
STATE OF NEW JERSEY, PLAINTIFF,
v.
ROBERT RELDAN, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided February 14, 1979.
*563 Mr. Robert Leaman, Assistant County Prosecutor, for plaintiff (Mr. Roger W. Breslin, Prosecutor of Bergen County, attorney).
*564 Mr. Frank Wagner, Deputy Public Defender, for defendant.
LUCCHI, J.S.C.
Counsel for the defense has moved to dismiss the above-captioned indictment for lack of jurisdiction. The facts, as derived from counsel's briefs, grand jury testimony and oral argument, are as follows:
On October 6, 1975 Mrs. Susan Heynes was reported missing from her home in Haworth, New Jersey, under circumstances that led her husband to believe she had been the victim of foul play. Mrs. Heynes was last seen by a neighbor outside her home at about 3:30 P.M. on the day of her disappearance.
On October 27, 1975 the nude body of Susan Heynes was discovered partially hidden beneath some broken-off tree branches in a wooded area of Valley Cottage, New York. An autopsy performed by the Rockland County Chief Medical Examiner indicated the cause of death to be homicide by strangulation.
Vacuum sweepings subsequently taken from defendant's Opel station wagon revealed strands of hair exhibiting the same microscopic characteristics as head hair samples taken from Susan Heynes. In addition, sensitive tracking dogs employed by the State detected Mrs. Heynes scent in defendant's automobile.
On October 14, 1975 Susan Reeve disappeared from her home in Demarest, New Jersey. She was last seen by a witness who "noticed something was wrong" as he observed her standing with a man near a parked station wagon about a quarter of a mile from her home. The station wagon was later positively identified as belonging to defendant.
Susan Reeve's nude body was discovered on October 28, 1975 in Tallman State Park, New York. The body had been partially covered with broken-off swamp reeds. The Rockland County Chief Medical Examiner was again summoned and determined the cause of death to be homicide by strangulation. In addition, he opined that Ms. Reeve had been the victim of rape and her body moved to the site of *565 its discovery subsequent to her murder. Articulable similarities in the manner of disappearance and death of the two victims led the Chief Medical Examiner to conclude that they were murdered by the same person.
As in the case of Susan Heynes, the scent of Susan Reeve was subsequently detected by tracking dogs to be present inside defendant's automobile. Ms. Reeve's scent was also located in two areas at the house of defendant's aunt in Closter, New Jersey. In one such area, the garage, investigators discovered blood stains of the same type as Susan Reeve's blood. Finally, vacuum sweepings extracted from defendant's automobile revealed the presence of hair strands possessing the same microscopic characteristics as those belonging to Susan Reeve.
On January 20, 1977 a Bergen County grand jury returned a two-count indictment against defendant charging him with the murders of Susan Heynes and Susan Reeve, in violation of the provisions of N.J.S.A. 2A:113-1 and 2A:113-2. Defendant now moves pursuant to R. 3:10-4 for the dismissal of said indictment based upon lack of jurisdiction.
Both the State and defense counsel have noted, and this court is likewise cognizant of, the fundamental legal principle that "an essential element necessary to the invocation of jurisdiction in criminal cases is that the crime be committed in the state in which the case is tried." State v. McDowney, 49 N.J. 471, 474 (1967); see also, State v. Stow, 83 N.J.L. 14 (Sup. Ct. 1912); State v. Wyckoff, 31 N.J.L. 65 (Sup. Ct. 1864); and 4 Wharton's Criminal Law and Procedure § 1501 (1957).
The opinion in McDowney, supra, recognized that a defendant moving pretrial to dismiss for lack of jurisdiction is faced with a significant burden. The court noted that:
* * * a pretrial motion to dismiss for lack of jurisdiction * * * should be granted only after very careful consideration. The moving party must carry the burden by showing that no inference could reasonably be drawn placing the site of the crime within the State. *566 Such consideration should require more than the mere presentation of affidavits. [49 N.J. at 475]
McDowney involved a motion to dismiss a murder indictment on the ground of lack of jurisdiction. In that case the body of the victim was found in New Jersey, as was the bloody automobile used to transport it into this State. Notwithstanding defendant's confession that he murdered the victim in Washington, D.C., the court in McDowney held, among other things, that the presence of the body in the State can alone be sufficient to allow the drawing of an inference that the crime was committed here. Defense counsel has urged this court to construe McDowney as standing for the proposition that the finding of a body in this State constitutes the sole justification for a trial court to exercise jurisdiction in the prosecution of a murder indictment. A full reading of the McDowney decision does not lend itself to so narrow an interpretation.
It is uncontroverted that the site of a crime need not be proved by direct evidence; it may be established by circumstantial evidence which permits the drawing of an inference that the crime was committed in this State. State v. Barr, 110 N.J. Super. 365 (App. Div. 1970), rev'd on other grounds, 58 N.J. 72 (1970); State v. Brooks, 136 N.J.L. 577 (E. & A. 1948).
While the presence of a body in this State can certainly be said to constitute strong circumstantial evidence justifying such an inference, it is equally clear to this court that the absence of such proof does not preclude the introduction and consideration of other circumstantial evidence that may be extant in a particular case.
The indictment in the present matter has been so constructed as to allow the State to proceed on a theory of either felony murder or premeditated murder, or both. See State v. Mayberry, 52 N.J. 413 (1968). In furtherance of this theory the State has advanced the offense of kidnapping as the underlying felony necessary to sustain a prosecution under *567 the former theory.[1] In this regard the State has cited the well-established principle that a sovereign has jurisdiction to try an offense where only part of that offense has been committed within its boundaries. See e.g., Leonard v. United States, 500 F.2d 673 (5 Cir.1974), and cases cited therein; see also, Conrad v. State, 262 Ind. 446, 317 N.E.2d 789 (Sup. Ct. 1974), wherein evidence of an assault and abduction in the forum state was held to provide an adequate jurisdictional basis for defendant's murder conviction, even where it could be inferred that the murder was actually committed in another jurisdiction.
It is incumbent upon this court in this case to weigh the probative value of the circumstantial evidence thus far presented so as to determine, pursuant to the McDowney standard heretofore cited[2] whether a reasonable inference may be drawn placing New Jersey as the site of any criminal activity vis a vis the two murder victims. To facilitate this task a brief iteration of the facts and evidence presented regarding the disappearance and death of each victim is necessary.
In the case of Susan Reeve, as has been mentioned, she was identified as having been seen near her home on the day of her disappearance, talking to a man near defendant's automobile. Her scent was later detected by a highly-trained tracking dog in both defendant's automobile and in two separate locations as his aunt's house.[3] Blood stains of the same type as Ms. Reeve's were found in the basement of that house. Hair samples matching her own head hair were found in defendant's automobile. On balance, it is the considered opinion of this court that the circumstantial evidence *568 presented in this case, and as listed above, constitutes a sufficient ground upon which a reasonable inference may be drawn that Susan Reeve was abducted and/or murdered in the State of New Jersey. The circumstances surrounding her disappearance are simply not consistent with defense counsel's speculation that Susan Reeve voluntarily and without compulsion left New Jersey and headed for the State of New York. The evidence presented more reasonably suggests that some form of criminal contact transpired between defendant and Susan Reeve.
As to Susan Heynes, as has been previously noted, Mrs. Heynes had last been seen in her backyard by a neighbor about 2 1/2 hours before her husband came home to discover her missing.[4] Her scent was later detected in defendant's automobile, as were strands of hair matching her own. Her nude body was found in upstate New York under circumstances so similar to that extant in the Susan Reeve case that the Rockland County Medical Examiner was prompted to conclude that she had been murdered by the same person who had killed Ms. Reeve.
As in the case of Susan Reeve, and noted in the grand jury testimony, the circumstances surrounding Susan Heynes' disappearance from her home in Haworth, New Jersey more readily lend themselves to the inference that she was abducted and did not leave the State of her own free will.[5]
The inference I have drawn, to wit, that both Susan Reeve and Susan Heynes were abducted and/or murdered in the *569 State of New Jersey, is given a further measure of reasonableness by the State's introduction into evidence of sworn statements given the Bergen County Prosecutor's Office by two inmates who served time with defendant at the New Jersey Prison at Rahway. The statements of brothers Clifford and Allison Williams, dated May 20, 1977 and marked S-1 and S-2 in evidence, respectively, contain numerous references to conversations each man had with defendant concerning his (defendant's) involvement with the present murder indictment. Those conversations touch directly upon defendant's culpability regarding the charged crimes as well as the site of their commission.[6]
Though obviously hearsay in nature, the sworn statements of Clifford and Allison Williams regarding their conversations with defendant vis a vis his involvement in the matter under consideration nonetheless serve to bolster the inference *570 that defendant abducted and murdered the two victims in New Jersey, thereafter transporting their bodies to New York in an effort to escape this State's jurisdiction.
To conclude, the circumstantial evidence put forth in this case as to each murder victim, when considered in its entirety, is sufficient to justify the inference that both victims were abducted and/or murdered in the State of New Jersey.
Defendant's motion to dismiss Indictment S-63-77 for lack of jurisdiction is therefore denied.
NOTES
[1] See N.J.S.A. 2A:113-1.
[2] 49 N.J. at 475.
[3] Ms. Reeve's scent was also detected in a second-floor bedroom in defendant's aunt's house, directly above the garage area where her scent and blood stains matching her blood type were also found.
[4] Mr. Heynes indicated that he had arrived home about 5:50 p.m. on the day of his wife's disappearance.
[5] In this regard, the grand jury transcript notes, among other things, that Mrs. Heynes car was found in the garage with the keys still in the ignition, with letters she had intended to mail lying on the front seat. Additionally, no note or message of any kind had been left for Mr. Heynes, and subsequent investigation revealed that Mrs. Heynes had planned to attend her regular pottery class that night, as additionally evidenced by her having laid out on her bed the clothes she intended to wear to the class.
[6] See, for example S-1, wherein Clifford Williams relates to a Bergen County investigator a conversation he had with defendant about the current indictment:

Q. What did he [Relden] say about those possible charges?
A. Well, there was different things he said at different times. For me to just remember the exact things he said at certain times, I couldn't, but I can just  general conversation over a period of our meetings  he made reference to the fact that he shouldn't have brought the two bodies up in the same place, in the same area.
See also S-1:
Q. What did he mention to you with regard to the transporting of the girls to New York State?
A. * * * He said, "I shouldn't have put them both in the same spot, or so near." He said, "I shouldn't have put them so near together," and he felt by bringing them up there that Bergen County wouldn't have jurisdiction, and that he would have taken the heat * * * off himself in Bergen County. He couldn't understand why Bergen County was interested in it, because since he felt as though he took the bodies up and put them in New York State it was a New York State matter.
In accord, see the sworn testimony of Allison Williams, S-2, wherein defendant is claimed to have independently confided in Allison Williams the same information as stated above.