CIACCIO, Judge.
Defendant, Gerald Wilson, was charged with the crime of second degree murder and was found guilty as charged. R.S. 14:30.1. He was sentenced to life imprisonment at hard labor, without benefit of parole, probation or suspension of sentence. Defendant appeals his conviction and sentence relying upon two assignments of error. We affirm defendant’s conviction and sentence.
Wayne Robbins, a nineteen year old from Columbia, Mississippi, was in New Orleans to undergo a physical examination for an offshore job. He came to New Orleans with the sister of the victim, Darrell Gatlin. While in town Robbins and the victim’s sister and brother visited several bars in the French Quarter. He left them and met with Darrell Gatlin early on the morning of June 5, 1981. Robbins and Gatlin went together to a French Quarter bar known as The Bourbon Pub. There they met Ray Humphrey who worked at the LeBistro, a bar across the street from this location. They also met with Gerald Wilson, a friend and customer of Humphrey. Shortly after his arrival at the bar, Darrell Gatlin was told by the bartender, Tony Garlotte, that he must leave the bar because he was under the legal drinking age. The four men agreed to engage in homosexual sex at Gatlin’s apartment on Magazine Street. Robbins and Gatlin lead the way to Gatlin’s apartment while driving Robbin’s Plymouth Duster. They were followed by Humphrey and Wilson in Wilson’s black Trans Am. After the four men entered the apartment the door was locked and a key was placed on the mantel. Wilson had a double barrel sawed off shotgun which he carried for protection. It was in a brown satchel with a towel draped over the butt.
At the apartment, the four men paired off, Wilson with Gatlin and Humphrey with Robbins. They engaged in homosexual sex acts on a double bed, which was located in the center of Gatlin’s bedroom. Upon completion of their sexual activities, Gatlin indicated that he wanted to be paid. Wilson removed his shotgun from the satchel and threatened Gatlin with death. Gatlin joked with Wilson about being shot. As Wilson stood some three to four feet away from Gatlin, who was seated on the bed, Wilson pulled the trigger of the shotgun. The shotgun blast struck Gatlin in the right neck and head killing him instantly. Wilson then attempted to turn the gun on *699 Robbins. He placed the gun near Robbins but was unsuccessful in shooting him because Robbins was rolling on the floor between the bed and the wall wrapped in a blanket.
Wilson left the house and joined Humphrey in the Trans Am which was parked outside. Humphrey had left the apartment prior to the shooting but he was told by Wilson that Wilson had to get rid of “the little boy”. Wilson told Humphrey that he didn’t think anything would become of this incident because he felt Robbins was too frightened to report it.
Wilson later called Nolan Carvon, his homosexual lover, and confessed the murder. Wilson told Carvon he threw the murder weapon into Lake Pontchartrain.
After Wilson left the apartment, Wayne Robbins pushed the door closed and blocked it with a chair. He wiped himself with a towel and put on the victim’s shirt. He then ran down the street to a telephone where he secured the phone number of the victim’s brother. Robbins telephoned Gat-lin’s brother, the police and an ambulance. He then returned to the apartment.
The victim’s brother and the brother’s girlfriend arrived first on the scene. Shortly thereafter Officer Susan Graham arrived as did Officer James Ducos of the crime lab, who investigated the scene, and Detective Fred Dantagon of the homicide division, who interviewed Wayne Robbins.
On June 5, 1981, Officer John Riley, a policeman who worked in the gay bars of the French Quarter was given the details of the Gatlin murder and asked to assist in the investigation. He interviewed Tony Garlotte, the bartender at the Bourbon Pub. Garlotte told Riley that on the date in question he was working the four until noon shift when Ray Humphrey and Gerald Wilson came into The Bourbon Pub for a drink. They joined two young men who were unknown to Garlotte. The four left in close proximity of each other with Humphrey and Wilson driving away in a Trans Am.
On the morning after the murder, Ray Humphrey heard the police were looking for him and he turned himself in to authorities. He was booked in the murder of Darrell Gatlin and he remained in jail for two weeks but was later released and the charges were dropped due to a lack of evidence. At his home Humphrey was shown a photographic spread and he selected Gerald Wilson as the perpetrator of the murder.
On June 25, 1981 Detective Dantagan contacted Wayne Robbins at his home in Columbia, Mississippi and informed him that they were bringing some photographs for him to view. Upon meeting with Robbins, he selected the photo of Gerald Wilson as the person who murdered Darryl Gatlin.
The defendant, Gerald Wilson, was arrested on November 28, 1981 in Pascagou-la, Mississippi after Ron Baughn received a tip from a confidential informant.
Several defense witnesses testified that on the date of the murder, June 5,1981, the defendant was in Spartanburg, South Carolina in order to visit his ailing mother. However, upon cross-examination each witness admitted that he was unable to fix a precise date for the alleged visit of the defendant.
The defendant first requested a review of the record for errors patent on its face. C.Cr.P. Art. 920(2). We have carefully reviewed the record in this case and find no such errors.
As his first assignment of error the defendant pro se alleges that he received ineffective representation from his appointed appellate counsel. We have reviewed the brief and record in this case and we find no support for the defendant’s position. Moreover, we observe that appointed counsel requested a review of the record for errors patent on its face. This very same request was made by the defendant pro se after he moved that his appointed counsel be withdrawn and his brief removed. We find that defendant’s appellate counsel is competent and that he has effectively represented the defendant before *700 this court. Accordingly we deny this assignment of error as being meritless.
As his second assignment of error the defendant pro se contends that he was denied due process of law in that he was not afforded a hearing by the State of Mississippi on his extradition from that State to Louisiana in order to stand trial for this murder charge.
This is not a matter for appeal, but rather is more properly addressed to a writ of habeas corpus directed to the asylum state at the time that extradition is proposed. See: Johnson v. Buie, 312 F.Supp. 1349 (Minn., 1970). Once a fugitive has been brought within the custody of the demanding state, the legality of extradition is no longer a proper subject of any legal attack by him. Siegel v. Edwards, 566 F.2d 958 (5th Cir., 1978). The sound rationale’ for this principle is set forth in United States Supreme Court case of Frisbie v. Collins, 342 U.S. 519, 72 S.Ct. 509 at 511-512, 96 L.Ed. 541 (U.S., 1952):
This Court has never departed from the rule announced in Ker v. Illinois, 119 U.S. 436, 444, 7 S.Ct. 225, 229, 30 L.Ed. 421, that the power of a court to try a person for crime is not impaired by the fact that he had been brought within the court’s jurisdiction by reason of a “forcible abduction.”7 No persuasive reasons are now presented to justify overruling this line of cases. They rest on the sound basis that due process of law is satisfied when one present in court is convicted of crime after having been fairly apprized of the charges against him and after a fair trial in accordance with constitutional procedural safeguards. There is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will.
For these reasons this assignment lacks merit.[1]
Finally, we have reviewed this case to determine whether the State has proven its case. The standard for this review is that enunciated in Jackson v. Virginia, namely, whether a rational trier of fact when viewing the evidence in the light most favorable to the prosecution could find that the State proved the essential elements of the crime beyond a reasonable doubt. 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (U.S., 1979); State v. Fuller, 414 So.2d 306 (La., 1982).
In this case the defendant was convicted of the crime of second degree murder. R.S. 14:30.1. That crime is the killing of any human being “when the offender has the specific intent to kill or to inflict great bodily harm.” R.S. 14:30.1.
The State proved by eye witness testimony that the defendant, Gerald Wilson, fired a sawed off shotgun at Darryl Gatlin with the intent to kill him and that the shot did cause Gatlin’s death.
Therefore, the totality of the evidence when viewed in the light most favorable to the prosecution satisfies this Court that any rational trier of fact could have found that the State proved the essential elements of the crime beyond a reasonable doubt.
For the reasons assigned, the defendant’s conviction and sentence are affirmed.
AFFIRMED.

. In excess of three weeks after the arguments and submission of this case, the defendant filed an additional pro se brief. Due to the untimely nature of this pleading we will not consider the assignments of error contained therein. Rather, these issues may be raised in an application for post conviction relief.