**Jose RIOS, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 85-276.**

Supreme Court of Wyoming.

Feb. 24, 1987.

Leonard D. Munker, State Public Defender, Julie D. Naylor, Appellate Counsel, for appellant (defendant).

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen., and Gerald P.

Luckhaupt, Asst. Atty. Gen., for appellee (plaintiff).

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

THOMAS, Justice.

The question which the court must resolve in this case is whether the State of Wyoming has jurisdiction to prosecute Jose Rios for interfering with child custody by failing or refusing to return the child to the custodial parent in Wyoming when at the time the crime was committed neither the child nor Jose Rios ever had been in this state. After a trial to the court the judge found Rios guilty and entered a judgment and sentence upon that conviction. At the same proceeding the trial court denied a motion to dismiss the prosecution based upon the absence of jurisdiction. The question is one of subject matter jurisdiction which arises in a constitutional context, and we acknowledge that at least one other state has held that jurisdiction does not exist under these circumstances. We affirm the judgment and sentence concluding that the State of Wyoming does have the requisite subject matter jurisdiction to prosecute Rios.

The issue framed by Rios in this case is: "Whether the State of Wyoming has jurisdiction to prosecute a crime which was allegedly committed outside of the State."

The State of Wyoming articulates these issues for resolution:

"I. The clear result of appellant's actions was to interfere with a Wyoming resident's right to custody in Wyoming.

"II. Appellant's failure to return the child, Jesus, was an act of omission criminalized by Section 6–2–204, W.S.1977 (1982 Cum.Supp.)."

Rios' statement of the issue assumes that the crime was committed outside of the State. The statute under which this prosecution was brought, § 6–2–204, W.S. 1977, Cum.Supp.1984, provides in pertinent part as follows:

"(a) A person is guilty of interference with custody if, having no privilege to do so, he knowingly:

\*　　\*　　\*　　\*　　\*　　\*

"(ii) Fails or refuses to return a minor to the person entitled to custody.

\*　　\*　　\*　　\*　　\*　　\*

"(d) Interference with custody is a felony punishable by imprisonment for not more than five (5) years if:

\*　　\*　　\*　　\*　　\*　　\*

"(ii) The defendant knowingly conceals and harbors the child or refuses to reveal the location of the child to the parent, guardian or lawful custodian."

\*　　\*　　\*　　\*　　\*　　\*

If Rios' assumption were correct, then we would agree that the State of Wyoming cannot punish conduct which occurs beyond its borders. The crime defined by this statute, however, could not have occurred in another state because the only place where Rios could fail or refuse to return the child to the custody of the person entitled to custody is Wyoming. The offense occurred in Wyoming or not at all, and the question which must be answered is whether there is an effect in Wyoming which is the result of Rios' extraterritorial acts.

The material facts essentially were stipulated by the parties before the trial court. Rios and the mother of the child began dating in New Mexico in approximately 1975, and subsequently, they lived together as man and wife. In June of 1977, Jesus Rios was born of this union. In 1979, the parents were married in New Mexico, and in 1980 they were divorced, also in New Mexico. In the decree of divorce the mother was awarded the care and custody of the child, and Rios was granted visitation rights. Subsequently, Rios and the mother stipulated that Rios should have custody of the child during the summer school vacation with the mother having reasonable visitation during that period.

Rios enjoyed the custody of the child during the summer of 1982. In 1983, the mother remarried in New Mexico, and again Rios enjoyed the custody of the child

during the summer of 1983. In May of 1984, the mother informed Rios that she would be moving to Buffalo, Wyoming, because her new husband was being transferred there in his employment. The record justified the district court in concluding that they agreed that Rios would have custody of the child during the summer of 1984 and would return him to the mother in Buffalo prior to the school term that fall. In June of 1984, the mother moved to Buffalo and on August 14, 1984, which was the day before Rios had agreed to return the child, Rios telephoned the mother who was in Buffalo and asked for a few more days. The mother consented to this request, and they agreed that Rios would return the child on August 18, 1984.

The child was not returned to his mother, and she attempted to locate Rios and the child. She was not able to do that, and she sought assistance from police authorities in New Mexico who also were unable to locate Rios and the boy. At that juncture, the mother filed a criminal complaint against Rios in Wyoming. In July of 1985, Rios was apprehended while attempting to cross the border from California to Mexico. An NCIC, National Crime Information Center, name check was conducted which disclosed the outstanding arrest warrant from Wyoming. Rios then was extradited to Wyoming to face the charge of failing or refusing to return a minor to the custody of the person entitled thereto. In the meantime, the boy was located at a residence which he had shared with his father in Los Angeles, and he was returned to his mother in Buffalo, Wyoming.

■ Rios argues that he must be discharged because he did not do anything within Wyoming to subject himself to its laws. He suggests that something akin to the minimum contacts concept articulated in *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), must be identified to justify jurisdiction. As one court has observed, however, the concept of minimum contacts found in *Shaffer v. Heitner*, supra, has no application to criminal cases. *State v. Luv Pharmacy*, 118 N.H. 398, 388 A.2d 190 (1978). Rios concedes that the court in Wyoming had personal jurisdiction over him. A state obtains personal jurisdiction over an accused by his physical presence before the court without regard to the manner in which that presence was obtained. *Hanson v. State*, Wyo., 590 P.2d 832 (1979); *State v. Clark*, Wyo., 392 P.2d 539 (1964); *Crouse v. State*, Wyo., 384 P.2d 321 (1963). Even in cases in which extradition is pursued, the rule is that once a fugitive has been brought within the custody of a demanding state through extradition he cannot attack the legality of that extradition or the personal jurisdiction of the court over him. *Yellen v. Nelson*, Colo., 680 P.2d 234 (1984); *State v. Wilson*, La.App., 450 So.2d 697 (1984); *State v. Flint*, W.Va., 301 S.E.2d 765 (1983); cases cited in Annot., 25 A.L.R.4th 157 (1983).

■ The only question to be resolved by this court is whether the State of Wyoming possessed the requisite subject matter jurisdiction over the crime charged so that it could prosecute Rios. Subject matter jurisdiction is essential to a prosecution for a criminal offense. "Jurisdiction of the offense charged * * * is a fundamental and indispensable prerequisite to a prosecution." *State v. Clark*, supra, 392 P.2d at 540. This court has held that lack of subject matter jurisdiction is so fundamental that, unlike personal jurisdiction, it cannot be waived. *Taylor v. State*, Wyo., 658 P.2d 1297, 1300, n. 3 (1983), citing *Matter of Estate of Harrington*, Wyo., 648 P.2d 556 (1982), and *Hayes v. State*, Wyo., 599 P.2d 569 (1979).

Rios frames his constitutional concern in the context of the language of the Sixth Amendment to the Constitution of the United States which provides:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, * * *."

This language quite literally addresses the concept of venue in the instance of crimes against the United States, but we recognize that some courts have adapted it to treat with state venue matters. This situation is more definitively analyzed in the context of the extent of legislative jurisdiction of the State of Wyoming and whether the state can define as a crime conduct initiated by acts which occur outside its borders but have a result here. In accord, *Lane v. State*, Fla., 388 So.2d 1022 (1980); *State v. Baldwin*, Me., 305 A.2d 555 (1973).

Subject matter jurisdiction is limited by the territorial reach of the courts. At common law the principle relating to criminal jurisdiction is stated to be "[t]he criminal law of a state * * * has no operation or effect beyond its geographical or territorial limits." E.g., *Hardy v. Betz*, 105 N.H. 169, 195 A.2d 582, 585 (1963). This general principle has been recognized in Wyoming. *Goldsmith v. Cheney*, 447 F.2d 624 (10th Cir.1971); *Linn v. State*, Wyo., 505 P.2d 1270, cert. denied sub nom *Lucas v. Wyoming*, 411 U.S. 983, 93 S.Ct. 2277, 36 L.Ed.2d 959, reh. denied, 412 U.S. 944, 93 S.Ct. 2780, 37 L.Ed.2d 405 (1973). In *Goldsmith v. Cheney*, Wyo., 468 P.2d 813 (1970), an accessory before the fact was tried in Wyoming because accessorial acts occurred here even though the felony was committed elsewhere. Chief Justice Gray, in dissent, noted "[c]ertainly it must be conceded as a general proposition that our criminal laws do not reach a crime committed beyond the borders of this state." 468 P.2d at 817. In a situation which represented the inverse of the factual situation in *Goldsmith v. Cheney*, 468 P.2d 624 supra, this court upheld the power of Wyoming courts to entertain a prosecution for accessorial acts committed in another state when the crime was committed in Wyoming. *Hopkinson v. State*, Wyo., 632 P.2d 79 (1981), cert. denied 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982). In that case we stated:

"* * * [I]t was in this state that the numerous phone calls were completed just as surely as though appellant was standing on Wyoming soil when he communicated his requests and instructions to his agents and they were carried out. The telephone transmitted his presence into this jurisdiction where he could manipulate and play his local pawns. The presence and acts of his agents within this state were his presence and acts." *Hopkinson v. State*, supra, at 100.

To the same effect is *Hopkinson v. State*, 708 P.2d 46, cert. denied —— U.S. ——, 106 S.Ct. 582, 88 L.Ed.2d 564 (1985).

We are cognizant of the common law rule that no territorial jurisdiction exists if both the conduct and the results occur outside the boundaries of the state. This is stated in W. LaFave & A. Scott, Criminal Law § 17 at 118 (1972), in this way:

"The common law adopts as the principal basis of jurisdiction a territorial theory of jurisdiction over crimes: a state has power to make conduct or the result of conduct a crime if the conduct takes place or the result happens within its territorial limits. Conversely, there can be no territorial jurisdiction where conduct and its results both occur outside its territory." (Footnotes omitted.)

This general rule, however, has been circumscribed to a degree by exercising jurisdiction in various factual circumstances which has resulted in extending the reach of the territorial jurisdiction concept. In *Strassheim v. Daily*, 221 U.S. 280, 31 S.Ct. 558, 55 L.Ed. 735 (1911), the State of Michigan sought to extradite the defendant from Illinois to answer charges of bribery and false representation concerning machinery which he had sold to the State of Michigan. The extradition proceeding was attacked by a habeas corpus petition, and at the hearing on that petition, Daily presented evidence that he had been in Chicago on the alleged dates of both crimes. The Supreme Court of the United States reversed the order of the district court granting the writ. In an opinion by Justice Holmes, which reasoned that Michigan could prosecute for acts which occurred outside its borders, the court said:

"If a jury should believe the evidence, and find that Daily did the acts that led

Armstrong to betray his trust, deceived the board of control, and induced by fraud the payment by the state, the usage of the civilized world would warrant Michigan in punishing him, although he never had set foot in the state until after the fraud was complete. Acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if he had been present at the effect, if the state should succeed in getting him within its power." (Citations omitted.) *Strassheim v. Daily,* supra, at 284–285, 31 S.Ct. at 560.

This court has had occasion previously to consider the matter of extraterritorial jurisdiction only in habeas corpus proceedings attacking extradition. In *Zulch v. Roach,* 23 Wyo. 335, 151 P. 1101 (1915), a writ of habeas corpus was denied for two individuals who attempted to avoid extradition on Michigan charges of using a fictitious business name and conspiracy to defraud. We concluded that these individuals were in Michigan near the time the crime was alleged to have been committed and were connected with the business enterprise that was questioned. In the opinion we said:

" * * * We are of the opinion that the correct rule is, that the presence of the accused in the demanding state at the time of the commission of the crime, or the doing of some overt act therein which is, and is intended to be, a material step toward the accomplishment of the crime is necessary to warrant their extradition, and whether they were so present may be inquired into on habeas corpus proceedings." *Zulch v. Roach,* supra, 151 P. at 1102.

In the course of that opinion we did cite *Strassheim v. Daily,* supra, with approval, which would indicate that this court recognized the possibility of Michigan jurisdiction over the individuals. We also have cited *Strassheim v. Daily,* supra, for the proposition that the question of whether the crime occurred while the accused was in a demanding state was not a question to be determined in habeas corpus but should

be reserved for trial in the demanding state. *Briggs v. Wilcox,* Wyo., 404 P.2d 752 (1965).

Other jurisdictions have extended the general common law proposition in various ways. One commentator has stated the proposition thusly:

" * * * [I]t is clear that, by means of one theoretical device or another, American state courts have penalized conduct which for all important purposes took place beyond the states' boundaries.

"One method the state courts have used is to invoke the territorial principle whenever any act pertaining to the criminal transaction occurs or takes effect within the forum state, even though in fact the major activity took place elsewhere. There are several common law illustrations of this:

"1. If an injury is inflicted through force set in motion from outside the state by one who was never physically present within the state, the situs (or a situs) of the assault or resulting homicide is in the state in which the force took effect." (Footnote omitted.) George, *Extraterritorial Application of Penal Legislation,* 64 Mich.L.Rev. 609, 622 (1966), citing *State v. Hall,* 114 N.C. 909, 19 S.E. 602 (1894).

*Simpson v. State,* 92 Ga. 41, 17 S.E. 984 (1893), presents another illustration. In that case the Georgia courts exercised jurisdiction over a defendant who fired a shot from outside of Georgia but hit a victim within Georgia.

In a somewhat similar case, the Supreme Court of South Dakota stated:

" * * * State jurisdiction properly lies when acts done outside its jurisdiction are intended to produce and do produce a detrimental effect within that jurisdiction. *Commonwealth v. Bighum,* 452 Pa. 554, 307 A.2d 255 (1973). The law holds that a crime is committed where the criminal act takes effect. *Simpson v. State,* 92 Ga. 41, 17 S.E. 984 (1893). And this holds true even though the accused is never actually present within the

state's jurisdiction. *State v. Brundage*, 53 S.D. 257, 220 N.W. 473 (1928). One who puts in force an agency for the commission of a crime is deemed to have accompanied the agency to the point where it takes effect. The state is then justified in punishing the cause of the harm as if he were in fact present at the effect should it ever succeed in getting him within its power. *Strassheim v. Daily*, 221 U.S. 280, 31 S.Ct. 558, 55 L.Ed. 735 (1911); *Rivard v. United States*, 375 F.2d 882 (5th Cir.1967); *People v. Anonymous*, 52 Misc.2d 772, 276 N.Y.S.2d 717 (1965); *Simpson v. State*, supra. Admittedly the doctrine of constructive presence is a legal fiction, but it is a fiction necessary to the practical administration of criminal justice." *State v. Winckler*, S.D., 260 N.W.2d 356, 360 (1977).

In Massachusetts convictions for forgery, false pretenses, larceny and uttering a forged instrument have been upheld in a case in which action outside that state produced a detrimental effect within it. *Commonwealth v. Levin*, 11 Mass.App. 482, 417 N.E.2d 440 (1981). Other jurisdictions also have invoked the "effect within the jurisdiction" rationale. *State v. Rossbach*, Minn., 288 N.W.2d 714 (1980); *Roberts v. State*, Tex.Cr.App., 619 S.W.2d 161 (1981); *State v. Klein*, 4 Wash.App. 736, 484 P.2d 455 (1971).

We recognize that South Dakota, Minnesota, Texas, Wisconsin and other states have adopted statutes which premise jurisdiction either on conduct or effect within the jurisdiction and thus broaden the common law territorial principle of jurisdiction. W. LaFave & A. Scott, § 17, supra, at 122. For example the statute in South Dakota in effect at the time of *State v. Winckler*,

supra, provided that " ' * * * the commission of a public offense commenced without this state * * * consummated within its boundaries, [subjects] the defendant * * * to punishment therefor in this state, and though he were out of the state at the time of the commission of the offense charged, if he consummated it in this state * * * the jurisdiction is in the county in which the offense is consummated.' " *State v. Winckler*, supra, 260 N.W.2d at 361, quoting SDCL 23-9-10 (recodified in substantially the same form as SDCL 23A-16-2 and 23A-16-7 (1979)). The supreme court of Wisconsin has explained the effect of such statutes.

"The cases cited by defendant for the proposition that it is improper to prosecute a person for an act not committed within the state are not in point. They uniformly recite that their criminal courts have no jurisdiction to prescribe a rule of conduct for one not within the state's borders. While such may be the law of those states, it is not the law in Wisconsin where, as outlined in sec. 939.-03, Stats., a person may be prosecuted for doing an act outside this state which has a criminally proscribed consequence within the state." (Footnote omitted.) *Poole v. State*, 60 Wis.2d 152, 208 N.W.2d 328, 330-331 (1973).

We also note that even though some courts limit their jurisdiction to the geographical or territorial limits of the state consistent with the common law rule, if it appears that some element or part of the criminal offense was committed within the state, even though other elements occur outside the state, the state in which one of the necessary elements occurred may prosecute.[1] Apparently, a number of states

---

1. See *State v. Kracker*, 123 Ariz. 294, 599 P.2d 250 (App.1979); *State v. Scofield*, 7 Ariz.App. 307, 438 P.2d 776 (1968); *Thomas v. State*, 262 Ark. 79, 553 S.W.2d 32 (1977); *People v. Buffam*, 40 Cal.2d 709, 256 P.2d 317 (1953); *United States v. Baish*, 460 A.2d 38 (D.C.App.1983); *Adair v. United States*, 391 A.2d 288 (D.C.App. 1978); *Conrad v. State*, 262 Ind. 446, 317 N.E.2d 789 (1974); *Commonwealth v. Lanoue*, 326 Mass. 559, 95 N.E.2d 925 (1950); *State v. Jones*, 51 Md.App. 321, 443 A.2d 967 (1982); *Bowen v.*

*State*, 206 Md. 368, 111 A.2d 844 (1955); *People v. Kirby*, 42 Mich.App. 97, 201 N.W.2d 355 (1972); *State v. Batdorf*, 293 N.C. 486, 238 S.E.2d 497 (1977); *Hardy v. Betz*, 105 N.H. 169, 195 A.2d 582 (1963); *State v. Reldan*, 166 N.J. Super. 562, 400 A.2d 138 (1979); *Commonwealth v. Nelson*, 377 Pa. 58, 104 A.2d 133 (1954), *aff'd*, 350 U.S. 497, 76 S.Ct. 477, 100 L.Ed. 640, *reh. denied*, 351 U.S. 934, 76 S.Ct. 785,

including Alabama, Arizona, California, Delaware, Florida, Illinois, New Hampshire, New York, Pennsylvania, Texas and Washington have codified this common law one-element principle. *State v. Jones*, 51 Md.App. 321, 443 A.2d 967, 974, n. 12 (1982), and cases cited therein.

We acknowledge that the extension of jurisdiction in accordance with these exceptions does not occur in every instance. The supreme court of Minnesota refused to assume jurisdiction in a case in which the defendant's conduct occurred outside the state even though it caused an injury within the state. *State v. McCormick*, Minn., 273 N.W.2d 624 (1978). In accord is *Howells v. McKibben*, Minn., 281 N.W.2d 154 (1979). When the Kansas Supreme Court was confronted with a situation in which the defendant had not intended to sell drugs in Kansas and did not even know that the drugs which were purchased from him were going to be resold in Kansas, it held that no jurisdiction existed to prosecute the defendant on the charge of sale of heroin in Kansas. The court recognized the proposition from *Strassheim v. Daily*, supra, that "a state may prosecute an individual for acts done outside a jurisdiction when he intends to and does commit a crime within that jurisdiction." The court went on to say, however:

> " * * * We feel the natural corollary to this rule is that a state does not have jurisdiction over an individual for a crime committed within that state when he was located outside the state, did not intend to commit a crime within the state, and could not reasonably foresee that his act would cause, aid or abet in the commission of a crime within that state." *State v. Palermo*, 224 Kan. 275, 579 P.2d 718, 720 (1979).

*Poole v. State*, supra, is one of several cases involving charges of criminal nonsupport of minor children. In those instances a further application of the territorial approach is found. The obligation to pay support is said to be to the children, and consequently, the offense occurs in the jurisdiction in which the children are located. The effect or result on which jurisdiction is premised is an omission rather than an affirmative act. *People v. Jones*, 257 Cal.App.2d 235, 64 Cal.Rptr. 622 (1967); *Derr v. Wilcox*, 94 Idaho 321, 487 P.2d 684 (1971); *State v. Shaw*, 96 Idaho 897, 539 P.2d 250 (1975); *State v. Wellman*, 102 Kan. 503, 170 P. 1052 (1918); *State ex rel. Brito v. Warrick*, 176 Neb. 211, 125 N.W.2d 545 (1964); *State v. Carr*, 107 N.H. 477, 225 A.2d 178 (1966); *State v. Tickle*, 238 N.C. 206, 77 S.E.2d 632 (1953); *Poole v. State*, supra; *Adams v. State*, 1164 Wisc. 223, 259 N.W. 726 (1916); *State v. Klein*, supra. The Minnesota court explained this proposition as follows:

> " * * * [T]he act of omission in nonsupport cases arises out of a fundamental obligation imposed on a parent at the time when the court had in personam jurisdiction. The situs of that obligation originates and remains with the residence of the child. Strong public policy supports jurisdiction to enforce that right wherever the child is domiciled." *State v. McCormick*, Minn., 273 N.W.2d 624, 627 (1978).

In narrowing our discussion to conduct like that proscribed by the statute which Rios was convicted of violating, we recognize that Minnesota declined to exercise jurisdiction. *State v. McCormick*, supra. That state has a statute which permits prosecution for acts which occur outside the state. It also analogized the detention of a child from its lawful custodian to a failure to pay support, but noted that the detention "is an offense committed not so much against the child as against the other parent." *Id.* at 627. The court then refused to apply its statute to a father who detained his own children outside of Minnesota with intent to deny the rights of his former spouse under a court order. The Minnesota court stated:

> " * * * Defendant constitutionally and historically can only be tried in the district where the crime occurred, a right

100 L.Ed. 1462 (1956); *State v. Winckler*, S.D., 260 N.W.2d 356 (1977).

which experience demonstrates is designed to further the ends of justice. "The fact that so few courts have addressed the question suggests that traditional restraint in prosecuting offenses committed outside the borders of the state is broadly accepted. While we recognize the serious dimensions of the social and economic problems the legislature seeks to correct, we are of the opinion that in adopting Minn.St. 609.26 it has reached too far. A more effective solution is the adoption of interstate compacts to enforce support orders, and the enactment of federal legislation which avoids constitutional difficulties inherent in the assertion of extraterritorial criminal jurisdiction by state courts." *Id.* at 628.

In *People v. Gerchberg*, 131 Cal.App.3d 618, 181 Cal.Rptr. 505 (1982), the California court of appeals took a somewhat different approach. Gerchberg had obtained a New York divorce. Subsequently, his ex-wife and children moved to California, and she then sent the children to New York to visit. Gerchberg decided not to return them to California which did have a statute making it a criminal offense to detain or retain children. The court held, however, that a defendant must have committed within California acts which amount at least to an attempt to commit a crime in order for California to prosecute and punish on account of conduct occurring outside the state. It ruled that because the intent to retain the children was formed in New York nothing even approaching an attempt to interfere with custody occurred within California.

Citing *People v. Buffam*, 40 Cal.2d 709, 256 P.2d 317 (1953), the court said:

" * * * California cannot punish for conduct taking place outside of California

unless the defendant has, within this state, committed acts which amount to at least an attempt to commit a crime punishable under California law." *People v. Gerchberg*, supra, 181 Cal.Rptr. at 506 (1982).

That ruling seems to represent an inhibition much more strict than the common law territorial principle and certainly is more limited than *Strassheim v. Daily*, supra.

With due deference to the rulings of our sister states, and recognizing a difference in statutory language, we conclude that Wyoming properly could exercise subject matter jurisdiction in this instance. Due regard for the rights of states reserved in Amendment X to the Constitution of the United States deserves a more positive response than that of the Minnesota court.[2] Neither do we deem it necessary to accept for Wyoming the shackles donned by the court in California.[3] While Wyoming does not have a specific statute which permits the exercise of jurisdiction when extraterritorial conduct causes a result in this state, the concept articulated in *Strassheim v. Daily*, supra, does not depend upon the existence of such a statute. In *Zulch v. Roach*, supra, this state did acknowledge the proposition that a state could criminalize acts which occurred outside the state if they produced an effect within the state. While the case dealt with a violation of a federal statute we think the following language from *Hyde v. United States*, 225 U.S. 347, 362–363, 32 S.Ct. 793, 56 L.Ed. 1114 (1912), is significant:

"This court has recognized, therefore, that there may be a constructive presence in a state, distinct from a personal presence, by which a crime may be consummated. And if it may be consummated, it may be punished by an exercise

---

**2.** The Minnesota legislature perceived the issue in the same way that we do. See 40 Minn.S.A. § 609.26 (West Supp.1987), and the history of amendments thereto.

**3.** Apparently the California legislature agreed because § 279 of the Penal Code has been amended so that subsection (e) now reads:

"(e) Pursuant to Sections 27 and 778, violation of Section 277, 278, or 278.5 is punishable in California, whether the intent to commit the offense is formed within or without the state, if the child was a resident of California or present in California at the time of the taking, or if the child thereafter is found in California." 48 Cal.Penal Code § 279(e) (West Supp.1987).

of jurisdiction; that is, a person committing it may be brought to trial and condemnation. And this must be so if we would fit the laws and their administration to the acts of men, and not be led away by mere 'bookish theorick.'"

In this instance Rios' ex-wife became a resident of the State of Wyoming, and under many jurisdictional concepts, she would be entitled to enforce the provisions of the New Mexico custodial decree in the courts of the State of Wyoming. By virtue of her presence and her right to the custody of this child and Rios' interest in that relationship preserved by the parties' stipulation which adjusted the decree, we have no difficulty in recognizing a result of Rios' conduct which occurred within the state of Wyoming. Rios assumed custody of the minor child in New Mexico. He was informed that the person entitled to lawful custody was moving to Wyoming, and he agreed that he would return the child to the lawful custody of the mother in Buffalo, Wyoming. He telephoned his ex-wife, who was then in Wyoming, to make those arrangements. He did not return Jesus, but instead he removed the child to California and concealed his presence there from the mother. Given this combination of circumstances the failure to return the child had its effect in the State of Wyoming. The adverse result occurred here, and there is no substantial distinction from the nonsupport cases cited above.

We wonder in passing if there is any jurisdiction other than Wyoming which would have taken an interest in pursuing Rios' unlawful conduct. We surmise, correctly we think, that the initiative to pursue the matter could only be found where the mother, who was entitled to custody, lives. In this instance that is Wyoming.

We conclude, therefore, that there was no error in the decision of the trial court that it had jurisdiction over the criminal conduct of Rios even though "he never had set foot in the state" until after the completion of the criminal act. Wyoming, having effected personal jurisdiction over Rios, was entitled to try and convict him for the crime charged.

The judgment and sentence is affirmed.

BROWN, Chief Justice, dissenting.

The majority opinion is so well packaged that it obscures the fact that it is wrong. The rule of this case is contrary to the common law and Wyoming statutes. Furthermore, it cannot pass constitutional tests.

The majority opinion starts out with the incorrect assumption that Mr. Rios' actions would not be prosecuted in any state other than Wyoming. Having decided this, the majority completely ignores constitution, statute and common law. The court takes a giant step, missing fundamental principles and reaches a result-oriented decision.

The majority opinion exhaustively cites relevant case law from other jurisdictions, only to conclude that Wyoming should ignore the conclusions reached by every other court cited.

There is no dispute in this case that neither Mr. Rios nor his son, Jesus, were ever within the State of Wyoming. All the relevant facts occurred in New Mexico—the marriage, the divorce, the custody determination, as well as the subsequent custody stipulation entered into by the parties. It is noted that the custody arrangement in May of 1984 was the result of a stipulation between appellant and his former wife. Such arrangement was not set out in the divorce decree. It is also not disputed that at some point Jesus' mother moved into Wyoming.

Neither is the law in dispute in this case. A court must have jurisdiction over both the offense charged and the person charged. The state did obtain personal jurisdiction over Mr. Rios pursuant to extradition from the State of California. The dispute in this case centers on subject matter jurisdiction.

After acknowledging that Wyoming has recognized the common law principle that a state's criminal laws are limited to its geographical limits, the majority cites cases

where such territorial limitations have been extended. An example is that of a person firing a bullet across state lines, and thus killing a person in another state without ever entering that state. The other example is of accessorial acts which cause agents to commit a crime in a state in which the accused never physically appeared. These cases are feeble authority for the majority's determination, and none of these examples deal with interference with child custody.

The cases cited by the majority that do deal with interference with child custody can be broken into two categories. Those which reach the result the majority reaches, and those which do not. Invariably, those that reach the result reached here by the majority are premised upon a specific criminal statute which authorizes those states to assume jurisdiction based either on conduct or effect. Wyoming has no such statute.

The majority opinion rejects cases wherein it has been ruled that even though the prosecuting state specifically *could* exercise jurisdiction by statute, it chose not to. An example of this is *State v. McCormick*, Minn., 273 N.W.2d 624 (1978).

In that case a Minnesota statute made it a crime to intentionally detain a child outside Minnesota with intent to deny another's rights under an existing court order. A further Minnesota statute expanded common law jurisdiction as follows:

"A person may be convicted and sentenced under the law of this state if:

"(1) He commits an offense in whole or in part within this state; or

"(2) Being without the state, he causes, aids or abets another to commit a crime within the state; or

"(3) Being without the state, he intentionally causes a result within the state prohibited by the criminal laws of this state.

"It is not a defense that the defendant's conduct is also a criminal offense under the laws of another state or of the United States or of another country." Minn.St. 609.025

The Minnesota Supreme Court held,

"[w]e do not find in these statutes adequate grounds for disregarding limitations on extra-territorial jurisdictions which have long been recognized as the law of the land." *Id.*, at p. 625.

That court recognized serious problems in the statute's potential application where "no contact between the parents, the child and the state of Minnesota exists." *Id.*, at 628. The hypothetical of Minnesota prosecuting for a felony a California parent wrongfully detaining a child from a parent living in Colorado in violation of a Nebraska court order "points up the difficulty of determining with certainty what interests the statute is designed to protect." *Id.*, at p. 628.

That court went on to say, as quoted in the majority, " * * * Defendant constitutionally and historically can only be tried in the district where the crime occurred, a right which experience demonstrates is designed to further the ends of justice." *Id.*, at p. 628.

The majority opinion effectively circumvents established, constitutionally mandated limitations on the exercise of jurisdiction. The majority ignores the fact that Wyoming has no statute extending subject matter jurisdiction beyond that found in common law, and insists on forging ahead regardless of the fact that more restrained courts have rejected such expansion even when given to them by their own legislators.

This court should heed the language of the Minnesota Supreme Court and accept the "traditional restraint in prosecuting offenses committed outside the borders of a state. * * * " As that court pointed out, the more effective solution than ignoring centuries of jurisprudence in the area of subject matter jurisdiction, not to mention the Sixth Amendment to the Constitution of the United States, is "the enactment of federal legislation which avoids constitutional difficulties inherent in the assertion

of extraterritorial criminal jurisdiction by state courts." *Id.*, at p. 628.

The majority, it seems, has created some variety of a reverse transitory criminal action; that is, the action can be brought where the person entitled to custody resides. Under the authority of this case I see no prohibition against a parent entitled to custody moving to Wyoming from any place for the sole purpose of filing a criminal complaint against the parent interferring with custody. This case may create a lot of new work for prosecutors.

I would reverse.